No. 111,027

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of:

R.S., DOB XX/XX/2005, a Male,
P.S., DOB XX/XX/2008, a Female, and
A.S., DOB XX/XX/2012, a Female,

Children Under Eighteen (18) Years of Age.

SYLLABUS BY THE COURT

1.

The district court's determinations that a parent is unfit and that the conduct or condition making the parent unfit is unlikely to change in the foreseeable future are factual determinations that must be supported by clear and convincing evidence. On appeal, the appellate court determines whether the evidence, taken in the light most favorable to the State (since the district court ruled in its favor), provided clear and convincing support for the district court's factual findings. The test on appeal is whether a rational factfinder could have found the facts highly probable based on the evidence.

2.

If the court makes a finding of unfitness, the court then must determine whether termination of parental rights is in the best interests of the child. The district court's determination in this regard is a discretionary judgment call. On appeal, the appellate court reviews the best-interests determination for abuse of discretion. A district court abuses its discretion when no reasonable person would agree with its decision or the decision is based on a legal or factual error. If the district court makes any additional factual findings that relate solely to the best-interests determination, those findings may

be made based on the preponderance of the evidence and are reviewed on appeal to see whether substantial evidence supports them.

3.

On the facts of this case, clear and convincing evidence supported the district court's finding that the parent was unfit and that the condition or conduct making the parent unfit was unlikely to change in the foreseeable future.

4.

On the facts of this case, the district court did not abuse its discretion in determining that termination of the parent's rights was in the children's best interests.

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed October 24, 2014. Affirmed.

*Jeffrey Leiker*, of Leiker Law Office, P.A., of Kansas City, for appellant mother.

*Susan Alig*, assistant district attorney, and *Jerome A. Gorman*, district attorney, for appellee.

Before STANDRIDGE, P.J., LEBEN and POWELL, JJ.

LEBEN, J.: Q.S. appeals from the termination of her parental rights to three children. Such rights may be terminated only in circumstances set out by statute and only when clear and convincing evidence supports the termination. Mother claims on appeal that the evidence in this case wasn't sufficient to terminate her parental rights and that the district court abused its discretion by terminating her rights rather than taking some other action, like giving her additional time to prepare for the children to live with her again.

But termination is authorized when a parent has shown a lack of effort to adjust her circumstances, conduct, and condition to meet the children's needs, K.S.A. 2013

2

Supp. 38-2269(b)(8), and when reasonable efforts by public and private agencies to get the family back together have failed. K.S.A. 2013 Supp. 38-2269(b)(7). Here, Mother agreed that the children were without adequate parental care when they were taken into State custody, and during the 10 months the case was pending, Mother had taken very limited steps toward accomplishing a variety of tasks aimed at reuniting her with her children. She had also missed scheduled visits with her children at least once a month for 6 months and had failed even to maintain contact with her assigned court-services officer for about 6 months.

We recognize that termination of parental rights is a serious matter. We have reviewed the record in this case, and we find clear and convincing evidence to support the district court's findings that Mother was unfit as a parent under Kansas law and that the conditions leading to that finding were unlikely to change in the foreseeable future. We also find no abuse of discretion in the district court's decision to terminate Mother's parental rights, and we therefore affirm its judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Cases like these are necessarily fact driven, so we must set forth the factual background in some detail. The children involved in this case—and their ages when initially removed from their mother's home—are R.S., a 7-year-old boy, P.S., a 4-year-old girl, and A.S., a 10-month-old girl. M.S. is the father of R.S. and P.S., while the identity of the father of A.S. was not established in this proceeding. The district court also terminated the parental rights of M.S. and of the unknown father of A.S., but only the mother's rights are at issue in this appeal.

This family came to the attention of child-welfare personnel with the Kansas Department for Children and Families on November 9, 2012. R.S. was admitted that day

3

to the KVC Mental Health Hospital because his behaviors were a danger to himself and others.

Hospital staff saw R.S. hitting, kicking, and cursing Mother's boyfriend, S.B. They also saw S.B. throw R.S. onto a couch 10 to 12 times and then sit on him to control him, while Mother stood by watching. At that time, Mother and S.B. had been staying in a motel with the children.

R.S. had previously been admitted to the same mental hospital in September 2012. At that time, he was kicking teachers, had threatened to kill his sister, had exposed himself to others, and had shown head-banging behavior. When hospital staff discharged R.S. in September, staff told the family that R.S. needed therapy and medication-management services, but the family did not follow through on those recommendations.

State child-welfare personnel referred the family for services through a social-service agency, DCCCA, and State and DCCCA personnel scheduled a meeting with Mother and S.B. at their residence in late November 2012. State personnel had asked that all family members be present, but only Mother, S.B., and A.S. were there; Mother said that R.S. and P.S. were at their father's home. Mother said she wasn't sure whether R.S. would continue to live with her full time, but she said she had not yet enrolled him in school or applied for insurance for the children in Kansas. R.S.'s father had withdrawn him from school in Missouri on November 26.

On November 28, Mother and S.B. were arrested for shoplifting in Missouri. All three children were with them at the time, so police also charged them with child endangerment.

Kansas child-welfare personnel learned that Mother and M.S. had a history of reports with Missouri child-welfare agencies dating back to April 2009. The early reports

4

were for bad hygiene, lack of food, and home cleanliness. In addition, when A.S. was born prematurely in February 2012, Mother tested positive for opiates. A.S. was also born with a herniated naval; Mother did not take her to scheduled doctor appointments to address that condition.

Upon investigation, Kansas staff learned that S.B. had been convicted of two misdemeanor sexual-battery charges involving a 15-year-old girl; as a result, he was required to register as a sex offender. S.B. also had a criminal history including theft and burglary.

Kansas filed child-in-need-of-care petitions for all three children on December 3, 2012. At first, the State did not seek immediate removal of the children from Mother's residence. But it filed an amended petition a week later asking that the children be removed immediately. In addition to earlier allegations, the amended petition alleged that although R.S. had by then been enrolled in school, he had attempted to run away several times when dropped off there; his parents had not picked him up from school one day; and S.B. was still spanking R.S. despite a case-plan recommendation not to do so. The children were removed from their home on December 12.

On January 29, 2013, the court held a hearing to determine whether the children were in need of care, a finding that would allow further proceedings, including possible termination of parental rights. Mother stipulated that the children were in need of care because they did not have adequate care from their parents for reasons beyond lack of financial means, K.S.A. 2012 Supp. 38-2202(d)(1), and because they were without the care necessary for their physical, mental, or emotional health, K.S.A. 2012 Supp. 38-2202(d)(2). The court placed custody of the children with the Department for Children and Families.

5

The court entered a series of orders for the parents to follow, aimed at reuniting the children with them. Based on Mother's past drug use and concerns about present usage (the amended petition alleged that she had prescription medications not prescribed for her when she was arrested for shoplifting), the court ordered that Mother get a substance-abuse evaluation and follow any recommendations she might be given. The court also ordered that Mother be available for random urine tests for drug usage, that she maintain regular contact with a court-services officer, that she attend parenting classes, that she obtain a mental-health evaluation and follow its recommendations, and that she maintain stable and appropriate housing. The order also provided for supervised visitations with the children. At a follow-up hearing 1 month later, the court added a requirement that Mother complete a batterer's-intervention assessment and follow its recommendations.

At a review hearing in June 2013, a court-services officer presented a report identifying several problems. One was Mother's continuing relationship with S.B. even though Mother had been told that the children could not come home if S.B. was living with her (based on his sex-offender history). In addition, Mother had not kept in contact with her court-services officer, had missed urine tests, and had not completed a batterer's-intervention assessment.

The State filed a motion to terminate Mother's parental rights in August 2013, and the court held a trial on September 17, 2013. The State presented the testimony of Dianne Keech, a court-services officer, and Christine Hannan, the case manager assigned to this family by KVC Behavioral Healthcare, a contract service provider for the State.

Hannan supervised visits, informed Mother of her responsibilities under the court's orders, and gave Mother referrals for the services she needed to complete the orders. She said that home visits had been discontinued because Mother had smoked in the home, which had caused problems for the children, who have asthma. Hannan reported that

6

Mother had had a very flat affect during initial visits and had not engaged with her children. After several visits and Hannan's prompting, Hannan said Mother had become more engaged but still had not expressed excitement about the visits and had to be prompted to change A.S.'s diapers.

In addition, Mother's attendance at visits wasn't consistent—she missed one visit in March, at least one in April, one in May, one in June, at least one in July, and one in August. She also missed a June case-planning meeting. Hannan said that Mother's missed visits affected the children, with R.S. acting out at school after missed visits and P.S. telling a foster parent that she never knew whether her Mother would show up.

Initially, S.B. attended the visitations as well. Keech said that Mother had continued to bring S.B. to visitations even after workers had told her not to do so; he finally stopped attending in March. Mother admitted that she had learned of S.B.'s sex-offender-registration status in February and that she had been told the children couldn't be placed with her as long as she lived with S.B. Mother said that she had ended her relationship with S.B. in August.

Mother completed some of the case-plan tasks but failed to complete many others:

- She didn't maintain regular contact with her assigned court-services officer from the January 2013 hearing through July, and the court-services officer couldn't contact Mother in April and May, even to notify her of scheduled urine tests. But Mother did maintain contact from July 31 until the trial.
- Mother tested positive for marijuana on September 5, 2013, though she denied using it. Mother completed some negative UA tests but missed others, in part because she couldn't be contacted.
- Mother completed a psychosocial assessment early in the case, which resulted in the recommendations that she complete mental-health and substance-abuse assessments. She did not obtain either of those assessments.

7

- Mother did not complete the batterer's-intervention assessment, although she was given information about where she could obtain that service (as well as other recommended assessments).

- Mother completed parenting classes between the June 2013 hearing and trial.

- Mother was not employed at any time during the case and was financially dependent on her parents or S.B.

- Mother lived in four different residences, two of which were motels, during the 10 months the case was pending. At the time of trial, she was residing temporarily with a friend in Kansas City, Missouri, but she said that she would have to leave that residence by October.

Keech testified that all three children had shown signs of neglect when taken into State custody. She said that R.S. had had extreme behaviors at first but that his behaviors had stabilized in foster care—he hadn't been hospitalized or had any critical episodes related to his mental health. P.S. had several health concerns that had not been addressed before she came into State custody. A.S., the infant, had been seriously underweight, had shown limited mobility, and had shown signs that she had been left on her back for extended periods before entering State custody. Hannan said that all three children were thriving in foster homes and that A.S. had gained weight and was becoming a more normally active infant.

Keech and Hannan expressed concern about Mother's lack of stability throughout the time they had worked with her. Both also expressed the opinion that no new orders would aid in reintegrating the children with Mother given the minimal effort she had made. Hannan also expressed the opinion that Mother was unlikely to change her circumstances in the foreseeable future.

Mother testified on her own behalf. She said that she believed her visits with the children were going well. She said she wanted to bring the children home but was still

trying to find a job. Mother said she had applied at a minimum of 16 places but had not found employment. She has a high-school education. She admitted that her living situation at the time was only temporary but said that she thought she could find a job by the time she had to leave the residence. She agreed that she did not know when she would get a job and a home appropriate for the children but believed that with more time she could improve her situation.

Mother said she had not had a mental-health assessment because she could not afford the $75 fee. But she also said that "in a way" she did not believe that she needed the evaluation.

The district judge concluded that Mother was unfit, that her unfitness was unlikely to change in the foreseeable future, and that it was in the children's best interests to terminate her parental rights so that the children could be adopted. The judge agreed with Mother's attorney that the case had only been pending a relatively short time and said that "if [he] thought [the parties] had moved one iota towards reintegrating the children" he would be inclined to give Mother additional time. But other than completing parenting classes and showing up for some visits, the district court found that Mother had made little progress. The court noted that Mother had missed visits with the children even in July and August, which was after the State had filed its motion to terminate parental rights.

The court found Mother unfit because she had not made a sufficient effort to adjust her circumstances to meet the needs of the children, K.S.A. 2013 Supp. 38-2269(b)(8), because reasonable efforts by appropriate agencies had been unable to rehabilitate the family, K.S.A. 2013 Supp. 38-2269(b)(7), and because Mother had failed to carry out a reasonable, court-approved plan aimed at reintegrating the family while the children were out of her physical custody, K.S.A. 2013 Supp. 38-2269(c)(3). The court also concluded that these conditions were unlikely to change in the foreseeable future.

9

The court concluded that it was in the children's best interests to terminate Mother's parental rights. The court did not make any further explanation; it orally recited a number of other findings, including those on unfitness, before addressing best interests. Earlier in the hearing, it had also made significant statements, including that Mother had "physically, mentally, and emotionally neglected the children," that "the ongoing mental health needs of [R.S.] . . . were clearly not being attended to," and that there was an overall lack of stability for the children.

Mother has appealed to this court.

## STANDARD OF REVIEW ON APPEAL

We must give some consideration to our standard of review on appeal. In this case, the district court has made two separate determinations that we must review. First, the district court made two findings related to Mother's fitness as a parent—that Mother was unfit for specific factual reasons and that this unfitness was unlikely to change in the foreseeable future. Those findings allowed the court to consider whether to terminate Mother's rights to her children. Second, the district court found that terminating Mother's parental rights was in her children's best interests.

Our standard for reviewing the first decision—the district court's conclusions on parental fitness—is well established. The district court may make the fitness findings based only on clear and convincing evidence, K.S.A. 2013 Supp. 38-2269(a), so we must determine on appeal whether clear and convincing evidence supports the district court's findings. To do so, we determine whether the evidence, taken in the light most favorable to the State (since the district court ruled in its favor), could have convinced a rational factfinder that these facts were highly probable. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

10

For the second decision—whether termination of parental rights is in the best interests of the child—our court has provided inconsistent statements about whether we should review the best-interests determination under an abuse-of-discretion standard or under the clear-and-convincing-evidence standard. Compare *In re K.P.*, 44 Kan. App. 2d 316, 322, 235 P.3d 1255 (abuse of discretion), *rev. denied* 291 Kan. 911 (2010), with *In re L.B.*, 42 Kan. App. 2d 837, 846, 217 P.3d 1004 (2009) (clear-and-convincing evidence), *rev. denied* 289 Kan. 1278 (2010). So here we consider the appropriate standard for that review.

We must be guided, of course, by the applicable statute, K.S.A. 2013 Supp. 38-2269. Once a child has been adjudicated as one in need of care, the statute provides that

> "the [district] court *may* terminate parental rights or appoint a permanent custodian when the court finds *by clear and convincing evidence* that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." (Emphasis added.) K.S.A. 2013 Supp. 38-2269(a).

From the statutory language, it's clear that the district court's ultimate decision—deciding to terminate parental rights, appoint a permanent custodian, or do neither—is a discretionary call. The statute says that "the court *may* terminate parental rights or appoint a permanent custodian" if certain facts exist, not that it *must* do so. The word "may" in a statute typically signals that the decision is a discretionary one. See *Jordan v. Jordan*, 47 Kan. App. 2d 300, Syl. ¶ 6, 274 P.3d 657 (2012). Discretionary decisions are reviewed for abuse of discretion.

We should note that in addition to K.S.A. 2013 Supp. 38-2269(a), which provides that the court *may* terminate parental rights or appoint a permanent custodian, the court's decision-making process is also addressed in K.S.A. 2013 Supp. 38-2269(g)(1). That

11

provision adds that "[i]f the physical, mental or emotional needs of the child would *best* be served by termination of parental rights, the court *shall* so order." (Emphasis added.) The use of "shall" in that provision doesn't change the call from a discretionary one to a mandatory one: only if the court determines termination is in the child's best interests—an inherently discretionary judgment call—is the court required to terminate parental rights. See *K.P.*, 44 Kan. App. 2d at 321-22.

The standard of review for a best-interests determination was not at issue in *In re B.D.-Y.*, our Supreme Court's seminal decision on the standard of review for factual findings. In *B.D.-Y.*, the appellate court reviewed a ruling that a child was in need of care for clear and convincing evidence to support the ruling. Like the fitness findings in the case now before us, child-in-need-of-care findings are based on a series of potential factual bases established by statute. See K.S.A. 2013 Supp. 38-2202(d). The district court makes no best-interests finding when it determines a child is in need of care; it simply authorizes further proceedings (including possible termination of parental rights). *B.D.-Y.* thus set out the standard of review for fact-based determinations, not discretionary judgment calls.

For the discretionary best-interests decision, abuse of discretion is the logical standard of review: A best-interests determination is "in all cases a highly discretionary call." *In re J.D.W.*, 711 A.2d 826, 834 (D.C. 1998). The Kansas Supreme Court has noted in the context of child-custody determinations arising in divorce cases that the "district court [is] in a better position to evaluate the complexities of the situation and to determine the best interests of the children," and its best-interests judgment is reviewed for abuse of discretion. *In re Marriage of Bradley*, 258 Kan. 39, 45, 899 P.2d 471 (1995); accord *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002). The same is true for a best-interests determination made during a proceeding to terminate parental rights.

12

Even so, we must still consider whether constitutional due-process principles require that we conduct a more stringent review: A parent has a fundamental liberty interest in his or her relationship with the child, so the allegations of conduct that form the basis for termination must be proved by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

But that does not necessarily mean that a best-interests determination must be reviewed under a clear-and-convincing-evidence standard. In an extensive analysis, the Illinois Supreme Court determined that the trial court's best-interests decision was a discretionary ruling that higher courts should review for abuse of discretion. *In re D.T.*, 212 Ill. 2d 347, 360-66, 818 N.E.2d 1214 (2004).

Like Kansas, Illinois follows a two-step process to terminate a parent's rights. The court must first find unfitness; if it does, the court then determines whether it is in the child's best interests to terminate the parent's rights. 212 Ill. 2d at 352. In addition, like Kansas, Illinois statutes require that the fitness determination be based on clear and convincing evidence. 212 Ill. 2d at 352. The court held that constitutional due-process requirements were satisfied by the high evidentiary requirement for an unfitness finding, where the focus is on the parent's conduct. Thus, a parent's rights cannot be terminated unless the court first finds unfitness—based on the parent's conduct measured against statutory standards. 212 Ill. 2d at 364.

In the best-interests phase, however, "[t]he issue is no longer whether parental rights *can* be terminated; the issue is whether, in light of the child's needs, parental rights *should* be terminated." 212 Ill. 2d at 364. During that determination, the Illinois Supreme Court concluded that trial courts may make any additional factual findings appropriate to answering the best-interests question under the preponderance-of-the-evidence standard (*i.e.*, whether a fact is more likely true than not). The court determined that this satisfied due-process requirements and was the most appropriate evidentiary standard given the

13

nature of the best-interests standard. 212 Ill. 2d at 366. We find the Illinois court's analysis persuasive.

We therefore review the best-interests determination under our traditional abuse-of-discretion standard: We review for abuse of discretion, which occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error. See *Critchfield Physical Therapy v. The Taranto Group, Inc.*, 293 Kan. 285, 292, 263 P.3d 767 (2011). In determining whether the district court has made a factual error, we review any additional factual findings made in the best-interests determination to see that substantial evidence supports them (recognizing that the preponderance-of-the-evidence standard applies in the district court). In most cases, however, the facts already found in the fitness phase—proved by clear and convincing evidence—will be the primary facts the court relies on for the best-interests determination.

ANALYSIS

I. *The District Court's Fitness Findings Are Supported by Clear and Convincing Evidence.*

Mother's first argument is that there was not clear and convincing evidence to support the district court's finding that she was unfit and that her unfitness was unlikely to change in the foreseeable future. Mother had stipulated previously that the children were in need of care, and she doesn't dispute that on appeal. Essentially she argues that while the State's evidence was true at the time of filing the motion to terminate parental rights, the case had only been pending a short time, and she had not been given enough time to complete the assigned tasks. She also contends that the agencies involved had not made reasonable efforts to reintegrate her with her children.

14

Once the district court has determined that children are in need of the State's care, K.S.A. 2013 Supp. 38-2269(a) provides that the court may terminate parental rights if it finds by clear and convincing evidence "that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." In determining whether a parent is unfit, the court may consider a number of factors set out in K.S.A. 2013 Supp. 38-2269(b) and (c), any one of which may constitute appropriate grounds for termination of parental rights. K.S.A. 2013 Supp. 38-2269(f).

Kansas agency workers had been involved with this family even before the child-in-need-of-care case was filed, and Missouri child-welfare workers had been involved previously. Kansas workers provided sustained assistance from December 2012 through September 2013. Hannan gave Mother the names of agencies that could provide her court-ordered evaluations at little or no cost. But Mother made only minimal efforts over the 10 months the children had been in State custody to take the steps required to regain custody of her children, leading the district court to say that there had not been "one iota" of real movement toward meaningful reintegration of the family. Mother's attendance at parenting classes and some visitations did not move the process forward in a significant way given the other things she had failed to do. Accordingly, the evidence strongly supports the conclusion that Mother had failed to adjust her circumstances to meet the children's needs, that reasonable agency efforts toward reintegration had failed, and that Mother had failed to carry out a reasonable court-approved plan aimed at reintegration.

We recognize that Mother had a different view as to the facts of the case, but we must take the evidence in the light most favorable to the State. In addition, in determining whether Mother's conduct was likely to change in the foreseeable future, we are to consider "foreseeable future . . . from the child's perspective, not the parent['s], as time perception of a child differs from that of an adult." *In re S.D.*, 41 Kan. App. 2d 780, Syl.

15

¶ 9, 204 P.3d 1182 (2009); accord *In re D.T.*, 30 Kan. App. 2d 1172, 1174-75, 56 P.3d 840 (2002); see K.S.A. 2013 Supp. 38-2201(b)(4).

II. *The District Court Did Not Abuse Its Discretion in Determining That the Children's Best Interests Supported Termination of Mother's Parental Rights.*

Mother's second argument is that the district court abused its discretion in concluding that termination of her parental rights was in the children's best interests. She agrees in her brief that the best-interests finding should be reviewed for abuse of discretion.

We find no abuse of discretion here. A reasonable person could agree with the district court's conclusion, and we do not find that the district court's conclusion was based on any factual or legal error.

At the time the children were removed from Mother's home, each of the children had serious physical or behavioral problems. After their removal, Mother had failed to obtain a substance-abuse assessment, even though she had tested positive for opiates at the time of A.S.'s birth and had provided one positive UA (while missing other tests). She had failed to obtain other assessments as well, and she had made no progress during the 10 months the case was pending toward providing a stable home for the children. While she made many visits with the children, she also missed several visitations.

Mother also argues that the court failed to consider alternatives to termination. But the court clearly gave consideration to her request for additional time—it simply concluded that there was no reason to believe additional time would produce results, given Mother's record since the case had begun.

16

Mother may feel that this opinion seems one-sided against her. We do not mean it to be. She did put forth some effort to comply with the court's orders; it simply was not enough. Even so, some comments we made in another case are equally true here:

> "Cases like this are difficult ones. A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008).

The district court's fitness findings were supported by clear and convincing evidence, and the court did not abuse its discretion in concluding that termination of Mother's parental rights was in the children's best interests. We therefore affirm the district court's judgment.