NOT DESIGNATED FOR PUBLICATION

No. 117,710

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of T'N.E.-R.E. and J.J.,
Minor Children.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed November 22, 2017. Reversed and remanded with directions.

*Christopher Cuevas*, of Kansas City, for appellant.

*Ashley Hutton*, assistant district attorney, and *Mark A. Dupree Sr.*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM: The Wyandotte County District Court in April 2017 terminated the right of R.U. to parent T'N.E.-R.E., her two-year-old daughter, and J.J., her six-year-old son. Much of R.U.'s unfitness as a parent appears to have stemmed from her association with K.E., the father of T'N.E.-R.E., with whom she was living when the children were taken into state custody. Well before the termination hearing, R.U. had severed her relationship with K.E. Although she had not promptly undertaken a number of steps required for reintegration with her children, we find insufficient evidence supported the district court's conclusion that R.U. would remain unfit as a parent for the foreseeable future, as required by K.S.A. 2016 Supp. 38-2269(a). We, therefore, reverse the termination order and remand for further proceedings.

1

The State first intervened with this family in January 2014 based on reports that J.J. was being physically abused, and the child was removed from the home. The State filed a child in need of care proceeding in Leavenworth County, where the family then lived. The evidence showed K.E. beat J.J., and R.U. admitted to being complicit in abusive discipline of J.J. After social service agencies worked with R.U. and K.E., J.J. was returned to the home. At some point, they moved to Wyandotte County. T'N.E.-R.E. was born in January 2015.

The next January, J.J. appeared in school with a swollen lip. When asked about it, he said that K.E. had kicked him. The State took J.J. into emergency custody two days later and petitioned to have T'N.E.-R.E. removed from the home as the half-sibling of an abused child. The district court issued an order placing T'N.E.-R.E. in state custody. The Wyandotte County District Attorney's Office then pursued child in need of care proceedings as to both J.J. and T'N.E.-R.E. With the children having been adjudged in need of care, family reintegration plans were developed for R.U. and K.E. In the court proceedings, J.J.'s natural father has been identified only as an unknown John Doe, so he was represented by appointed counsel but never appeared in person.

The State filed a motion in March 2017 to terminate the parental rights of R.U., K.E., and John Doe. The district court held an evidentiary hearing a month later and granted the motion. K.E. has not appealed, so we focus on the evidence pertaining to R.U.

The evidence at the termination hearing showed that R.U. had moved out of K.E.'s residence after the children were taken into state custody. She moved in with her mother and had signed a lease on a two-bedroom apartment in the same complex shortly before the termination hearing. The assigned case manager had not had an opportunity to inspect

the apartment, so R.U. could not demonstrate she had suitable housing for T'N.E.-R.E. and J.J. The undisputed evidence showed that R.U. and K.E. no longer associated with each other.

R.U. had been working fulltime at a fast food restaurant for about three and a half months at the time of the termination hearing. She had worked fulltime for another employer for four months with about a month gap between the jobs. R.U. regularly participated in scheduled visitation with T'N.E.-R.E. and J.J., and the case managers described her interactions with the children as appropriate and constructive. According to the case managers, the children appeared to have bonded with R.U. and enjoyed the visits. R.U. took four drug tests over about a nine-month period. She tested positive for marijuana twice and tested negative for all screened substances twice.

The State presented no evidence that T'N.E.-R.E. had been physically abused or otherwise neglected. Nor did it present testimony that J.J. had been mistreated on a recurring basis after he had been returned to the home.

The evidence at the termination hearing showed that R.U. had not undertaken many of the tasks in the reintegration plan. R.U. failed to go through evaluations the social service agency required, including assessments of her mental health and parental skills, her drug and alcohol use, and domestic violence related issues. As the case managers explained, those evaluations might then indicate areas in which R.U. would require or at least benefit from tailored counseling plans. For example, the available information indicated that K.E. had not only physically abused J.J. but R.U. as well. One of the case managers agreed R.U.'s decision to separate from K.E. as a "positive change" but suggested R.U. would find counseling especially beneficial in heading off circumstances with the potential for further domestic violence. The case manager suggested R.U. could complete those tasks and the allied follow-up care in four to six months if she applied herself diligently. The other case manager expressed concern about

3

R.U.'s slow progress with the reintegration plan and favored termination of parental rights "for the sake of meeting permanency timely"—apparently meaning that with K.E. and R.U. legally out of the picture, other placements could become available. But the State presented no evidence the children had concrete options with other family members or through adoption.

As to R.U., the district court found her to be unfit based on her "physical, mental or emotional . . . neglect" of the children, as provided in K.S.A. 2016 Supp. 38-2269(b)(4); the failure of "reasonable efforts" by social service agencies to rehabilitate the family, as provided in K.S.A. 2016 Supp. 38-2269(b)(7); her "lack of effort . . . to adjust [her] circumstances, conduct or conditions to meet the needs of the child[ren]," as provided in K.S.A. 38-2269(b)(8); and her failure to carry out a reasonable reintegration plan after the children had been removed from the home, as provided in K.S.A. 2016 Supp. 38-2269(c)(3). The district court also found those conditions of unfitness were unlikely to change in the foreseeable future and the best interests of the children would be furthered by terminating R.U.'s parental rights. See K.S.A. 2016 Supp. 38-2269(a), (g)(1). Those findings appear in the district court's journal entry of termination. In its bench ruling at the termination hearing, the district court emphasized R.U.'s laxity and procrastination in undertaking the tasks outlined in the reintegration plan. R.U. has appealed.

LEGAL ANALYSIS

On appeal, R.U. challenges the sufficiency of the evidence to support the required statutory components of termination:  (1) parental unfitness; (2) continuation of that unfitness for the foreseeable future; and (3) best interests of the children being served by terminating the rights of the parent. See K.S.A. 2016 Supp. 38-2269. We outline settled legal principles bearing on a judicial decision to terminate and then apply those principles to the evidence related to R.U.

4

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(c). In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in the evidence must be resolved to the State's benefit and against R.U.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g). As directed by the language of K.S.A. 2016 Supp. 38-2269(g), the district court gives "primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. *In re*

5

*R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16.

Our task in analyzing this case has been substantially complicated because of the State's brief, which can fairly be described as dumbfounding. A substantial portion of the factual statement identifies witnesses having no involvement in this case and recounts testimony and other evidence without any apparent connection to this case. The citations for that material do not correspond to what is in the appellate record. To all appearances, large sections of the facts were drawn from at least one other case. The State then relies on many of those vagabond factual representations in support of its legal arguments. By rule, asserted facts in a brief that are not cited to the appellate record may be disregarded. Kansas Supreme Court Rule 6.02(a)(4) (2017 Kan. S. Ct. R. 34); Kansas Supreme Court Rule 6.03(a)(3) (2017 Kan. S. Ct. R. 33). We may likewise discount facts not supported by the cited portions of the record. Those rules govern here as to those portions of the State's brief that seem to outline and rely on facts from other cases as if they were part of the record in this case.

The actual evidence in this case supports the district court's conclusion that R.U. was unfit at the time of the termination hearing at the very least because she had no suitable residence for T'N.E.-R.E. and J.J. R.U.'s failure to participate in the screening required in the reintegration plan arguably rendered her unfit, since those diagnostic instruments might reveal conditions diminishing her ability to parent the children without some additional counseling or intervention from the social service agencies. Far less clear is some separate basis for the district court's finding that R.U. had been physically, mentally, or emotionally neglectful of T'N.E.-R.E. and J.J. We presume the district court based that conclusion on R.U.'s extended inattention to tasks in the reintegration plan, thereby stalling any restoration of the family.

6

But the evidence fails to support the district court's conclusion that R.U.'s unfitness would persist for the foreseeable future—a separate and distinct requirement in ordering termination of parental rights. At the time of the hearing, R.U. had leased an apartment that very well might have been adequate. A case manager's inspection of the premises was required. Nobody indicated the inspection could not be done promptly. R.U.'s completion of the remaining components of the reintegration plan was more open-ended, since the extent of additional counseling she might need (if any) had not been determined. As we have indicated, a case manager projected a four- to six-month window. Again, nobody suggested the children could not be returned to R.U.'s physical custody sooner with continued oversight through the social service agencies.

We cannot say a fact-finder would find it highly probable that R.U.'s unfitness would likely persist for an extended time. We, of course, recognize the determination should be based on "child time." As the Revised Kansas Code for Care of Children notes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward to a prompt, permanent disposition. K.S.A. 2016 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"). Notwithstanding the ages of T'N.E.-R.E. and J.J., the projected time periods and tasks remaining as of the termination hearing did not demonstrate that R.U. would remain unfit for the "foreseeable future," as contemplated in K.S.A. 2016 Supp. 38-2269(a). An extension of the reintegration plan for several months would have been appropriate.

In light of R.U.'s separation from K.E., their circumstances had to be viewed separately. K.E. regularly missed scheduled visits with the children, failed to maintain continuing employment, and had done nothing to address his substantial role in the

7

domestic violence. R.U. had an established relationship with T'N.E.-R.E. and J.J.—she was not a parent chronically absent from their lives. Cf. *In re M.H.*, 50 Kan. App. 2d 1162, 1172, 337 P.3d 711 (2014) (established parent-child relationship would militate against termination of rights based on parent's relatively short period of incarceration). By all accounts, the children valued their relationship and visits with R.U. during these proceedings. Especially after K.E.'s departure, the relationship seemed to be a beneficial one worth preserving if possible.

In short, the district court erred in its finding of unfitness under K.S.A. 2016 Supp. 38-2269(a). The termination order, therefore, was also erroneously entered. We need not address the district court's determination that the best interests of T'N.E.-R.E. and J.J. were advanced by terminating R.U.'s parental rights. A statutorily sufficient finding of unfitness is a necessary condition for even reaching the best-interests issue. Our conclusion obviates the need to review the best-interests finding.

We reverse and remand for further proceedings. Although we have set aside the finding of unfitness and the resulting termination order, T'N.E.-R.E. and J.J. remain children in need of care. On remand, the district court should approve a new reintegration plan for R.U. The plan must fairly account for the lapse of time associated with this appeal and the concomitant lack of contact between R.U. and the children—a circumstance that almost certainly will make reintegration more complicated. But those complications have to be attributed to the judicial process rather than to R.U. Accordingly, R.U. should not be disadvantaged in any renewed reintegration efforts because of the time taken up in this appeal.

Reversed and remanded with directions.