NOT DESIGNATED FOR PUBLICATION

Nos. 117,920
117,921

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of D.C. and L.C.,
Minor Children.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed December 15, 2017. Affirmed.

*Leslie Ann Johnson*, of Leslie Ann Johnson Law Office, LLC, of Salina, for appellant natural mother.

*Nathan L. Dickey*, assistant county attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM:  The Saline County District Court terminated the right of S.C. to parent her sons D.C. and L.C., who were then 10 and 7 years old, principally because she persisted in regularly using marijuana despite warnings that her drug habit could cause her to lose her children. S.C. could not or would not reform her behavior during the 15 months D.C. and L.C. were in state custody. On appeal, S.C. disputes the sufficiency of the evidence supporting the district court's termination order. We find the overall circumstances, including the deplorable conditions in which the children had been living, adequately support termination and, therefore, affirm the district court.

1

The police were dispatched to S.C.'s home in late January 2016 based on a report of a loud argument between S.C. and her longtime boyfriend. The children's father died years earlier. The police found what can fairly be described as grossly inadequate living conditions. Only two space heaters provided warmth in the dead of winter. The house was strewn with rotting food, while the refrigerator was empty. Neither boy had a bed. And the house was infested with cockroaches. The law enforcement officers took D.C. and L.C. into emergency custody.

The county attorney's office filed petitions to have the children adjudged in need of care. The district court ordered the children to be placed in the temporary custody of the State and found them to be in need of care. In the meantime, a designated social service agency formulated a plan that would permit S.C. to regain custody of her children. S.C., however, was unable to conform to the conditions of the plan and to complete some of the required tasks. Most notably, S.C. regularly tested positive for marijuana throughout the course of these proceedings—more than 40 times in all. She also tested positive once for methamphetamine, which she attributed to a false positive result, and once for methadone.

S.C. missed some scheduled visits with D.C. and L.C. because of the drug test results and never was in a position to have anything more than limited, supervised visitation with the children. S.C. frequently switched jobs during these proceedings with some periods of unemployment, at least suggesting a lack of stability. She also failed to complete a mental health screening process and never came to grips with her drug use.

The county attorney's office filed a motion to terminate S.C.'s parental rights in early February 2017, as provided in the Revised Kansas Code for Care of Children. See K.S.A. 2016 Supp. 38-2269. The district court held a termination hearing about three

months later. The parties agreed to a stipulated record consisting of the factual recitation in the motion supplemented with reports and a timeline from the social service agency. The lawyers also made proffers to the district court about the most recent developments in the case. The record indicated the State had previously provided family services to S.C. and had an open investigation into her supervision of the children when the police came to her residence in January 2016. The record also showed that S.C. had told representatives of the social service agency she did not intend to stop using marijuana. And she continued to take and consistently fail drug tests even after the termination motion had been filed. S.C. never offered some mitigating circumstance or explanation for her chronic use of marijuana.

The district court found S.C. to be unfit as a parent and that the condition of unfitness was unlikely to change in the foreseeable future, thereby warranting termination of her rights. The district court also ruled that termination would be in the best interests of D.C. and L.C. But the district court did not indicate the specific grounds on which it based its finding of unfitness either in its bench ruling at the end of the hearing or in the later journal entry of termination. See K.S.A. 2016 Supp. 38-2269(b), (c). S.C. has appealed.

ANALYSIS

As we have indicated, S.C. challenges the sufficiency of the evidence to support the legal components of the termination order—her unfitness, the unlikelihood of change in the foreseeable future, and the best interests of the children. We set out the guiding legal principles and then apply them to the evidentiary record in this case.

A parent has a constitutionally protected liberty interest in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 759-60, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Given the

3

inherent importance and unique character of that relationship, the right has been deemed fundamental. Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2016 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

As provided in K.S.A. 2016 Supp. 38-2269(a), the State must prove the parent to be unfit "by reason of conduct or condition" making him or her "unable to care properly for a child" and that the circumstances are "unlikely to change in the foreseeable future." The statute contains a nonexclusive list of nine conditions that singularly or in combination would amount to unfitness. K.S.A. 2016 Supp. 38-2269(b). And the statute lists four other factors to be considered if a parent no longer has physical custody of a child. K.S.A. 2016 Supp. 38-2269(c). In reviewing a district court's determination of unfitness, an appellate court must be convinced, based on the full evidentiary record considered in a light favoring the State as the prevailing party, that a rational fact-finder could have found that decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. The appellate court cannot weigh conflicting evidence, pass on the credibility of witnesses, or otherwise independently decide disputed questions of fact. 286 Kan. at 705. In short, any conflicts in the evidence must be resolved to the State's benefit and against S.C.

Having found unfitness, the district court must then decide whether termination of parental rights is "in the best interests of the child." K.S.A. 2016 Supp. 38-2269(g). As directed by the language of K.S.A. 2016 Supp. 38-2269(g), the district court gives "primary consideration to the physical, mental[,] and emotional health of the child." The district court makes that determination based on a preponderance of the evidence. *In re R.S.*, 50 Kan. App. 2d at 1116. The best-interests issue is essentially entrusted to the district court acting within its sound judicial discretion. 50 Kan. App. 2d at 1115-16.

Although the district court did not tie the stipulated evidence to particular conditions identified in K.S.A. 2016 Supp. 38-2269 as demonstrating unfitness, we may do so, since that entails a legal determination disassociated from any fact-finding function entrusted to the district court. Pertinent here, the Revised Kansas Code for Care of Children supports a finding of unfitness on any of the following grounds:

• A parent's use of illegal drugs or other intoxicants to the extent he or she is unable to adequately meet the ongoing physical, mental, or emotional needs of the child. K.S.A. 2016 Supp. 38-2269(b)(3).

• A parent's lack of effort to adjust his or her circumstances, conduct, or conditions to meet the needs of the child. K.S.A. Supp. 38-2269(b)(8).

• After a child has been removed from the home, the parent's failure to carry out a reasonable plan aimed at reintegrating the family. K.S.A. 2016 Supp. 38-2269(c)(3).

Applying the appropriate appellate review, we may conclude that S.C.'s chronic drug use played a material part in the condition of the home when D.C. and L.C. were taken into emergency custody. We needn't repeat that description, except to note the conditions were wholly incompatible with the physical and emotional well-being of the children. We may likewise conclude that S.C.'s unwillingness or inability to abstain from marijuana would lead a reasonable person to conclude the children would again be thrust into a decidedly unhealthy environment if they were returned to the home. S.C. also tested positive twice for other illegal substances.

During the course of these proceedings—over some 15 months—S.C. would not stop using marijuana, even though she knew that was a necessary step for her to get her children back. And she did not avail herself of programs that might have helped until the very end of the process. In the meantime, S.C. was unable to visit with D.C. and L.C. on

a number of occasions because she had failed drug tests, and she was never permitted to take them on supervised or unsupervised excursions away from the social service agency.

S.C. never suggested her use of marijuana had some legitimate therapeutic purpose for a diagnosed medical condition. We offer no opinion whether that would necessarily be a mitigating circumstance in some hypothetical case, especially since the use and possession of marijuana remains illegal in Kansas for any purpose. Here, we have two young children whose basic needs were neglected. In turn, we have a parent unwilling to or incapable of discontinuing an illegal activity that may have contributed materially to that neglect and clearly prevented her from regaining custody of her children. That sort of conduct, neglect, and recalcitrance are illustrative of the statutory grounds for termination in K.S.A. 2016 Supp. 38-2269(b)(8) and (c)(3). The district court, therefore, had a sufficient factual basis to find S.C. unfit.

Without belaboring the evidence, S.C.'s actions (and inaction) also demonstrated an inability to alleviate the condition of unfitness in the foreseeable future. S.C. utterly failed for 15 months, so there was no concrete reason to expect anything would change—only a blind optimism that it might. The law does not recognize blind optimism as a sound reason to return severely neglected children to the circumstances that fostered their neglect. The district court had a sufficient basis to find the condition of unfitness was unlikely to change in the determinate future. The comparatively young ages of D.C. and L.C. underscore that finding. As the Code recognizes, children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward to a prompt, permanent disposition. K.S.A. 2016 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's"). The district court expressly and correctly applied the child-time concept here.

6

Finally, the district court did not abuse its wide discretion in finding that the best interests of D.C. and L.C. would be served by terminating S.C.'s parental rights. All of the evidence we have already outlined supports that conclusion, particularly the deplorable environment from which the children were removed and S.C.'s inability to alter her conduct thereafter to meet a basic condition of a reasonable reintegration plan. The district court took account of the facts and the legal requirements to reach a conclusion well within the judicial mainstream.

Affirmed.