NOT DESIGNATED FOR PUBLICATION

No. 119,370

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of C.D., A.D., J.D., S.D., and B.D.,
Minor Children.

MEMORANDUM OPINION

Appeal from Atchison District Court; MARTIN J. ASHER, judge. Opinion filed October 19, 2018.
Affirmed.

*Kelly J. Fuemmeler*, of Troy, for appellant natural mother.

*Patrick E. Henderson*, assistant county attorney, for appellee.

Before BRUNS, P.J., BUSER and SCHROEDER, JJ.

PER CURIAM: A.T. (Mother) appeals the district court's order terminating her
parental rights to C.D. (YOB 2015), B.D. (YOB 2012), A.D. (YOB 2010), J.D. (YOB
2010), and S.D. (YOB 2009). On appeal, Mother contends there was insufficient clear
and convincing evidence to support the district court's decision to terminate her parental
rights. After careful review of the parties' briefs and the record on appeal, we find no
error in the district court's termination order. Accordingly, we affirm the district court's
judgment terminating Mother's parental rights.

FACTUAL AND PROCEDURAL BACKGROUND

Mother is the biological mother of C.D., B.D. A.D., J.D., and S.D. The family was
referred to KVC in 2014 and received family preservation services for one and a half
years. In January 2016, while living in Doniphan County, S.D. reported that somebody

1

had been touching her "bad spot." A child in need of care (CINC) action was filed in Doniphan County, but the family moved to Atchison in April 2016. After moving to Atchison, the family stopped contact with KVC.

The Department of Children and Families (DCF) subsequently received a report that A.D. was physically abused. On May 4, 2016, Kelly Sneller, a DCF social worker, observed that A.D. had bruises on his nose and forehead. A.D. explained that his Father had struck him in the face with a belt buckle. Sneller also observed a circular burn on A.D.'s shoulder blade. A.D. said that his uncle who lives with the children burned him with a cigarette as punishment for not listening. A.D. stated his uncle also used this punishment on the other children.

Sneller also interviewed J.D. and S.D. that same day. With regard to J.D, Sneller observed bruising on his left cheek. J.D. reported that someone hit him with a belt, but he would not disclose the name of the person. J.D. also said that Father hits Mother and the couple occasionally fight. Sneller noted that J.D. appeared thin for his age.

Like A.D., S.D. also had an oval shaped burn on her arm. S.D. explained that she was burned when she ran into Father's cigarette. S.D. advised that Mother and Father use a belt to punish the children and that she was hit with a belt that morning. During the interview, S.D.—who was seven years old—disclosed that someone had touched her "bad spot on the inside." A day after the interview, S.D. reported that she has a "husband" who sleeps with her in bed, gives her lots of kisses, and told her "let's make this our little secret."

After the interviews, Sneller conducted a home visit. Sneller noticed that C.D. had the same dirt on his face and chest as when Sneller saw him the previous day. Sneller asked Mother to take a drug test that afternoon. Mother admitted that she "smoked a

2

joint" the previous weekend but she agreed to submit to a drug test. However, Mother never took the drug test.

Mother denied that she caused the injuries found on the children. Mother explained that she was unsure if anyone in the home caused the marks because "she is asleep in her room most of the time and does not know what goes on."

After the interviews and home visit, DCF was worried about excessive physical discipline being used on the children. There was also concern that the children did not have a stable home as the family continuously moved. In fact, the family was, again, going to be homeless two days after Sneller conducted the home visit.

On May 5, 2016, the State petitioned the district court to declare each of the five children as CINC, which Mother did not contest. That same day, the district court entered an ex parte order placing the children in the protective custody of DCF. The district court then adjudicated all five children as CINC. The district court also directed that a reintegration plan for Mother to be filed.

Mother executed a reintegration plan on May 25, 2016. The plan required, in part, that Mother:

- have weekly face-to-face contact with the children, contingent on two consecutive negative drug tests;
- complete a mental health intake, follow all recommendations, and permit updates to the court;
- complete a drug and alcohol assessment and follow all recommendations, refrain from using illegal drugs, and submit to random drug screens;
- maintain appropriate housing with working utilities, and no one to reside in the home with her without KVC approval;

3

- financially support herself and the children;
- not associate or socialize with individuals who use illegal substances, and
- complete the reintegration plan within six months.

The reintegration plan provided that Mother must comply with its terms for successful reintegration. By signing the reintegration plan, Mother affirmed that the plan was not overly burdensome and she acknowledged that noncompliance may result in the termination of her parental rights. The reintegration plan was filed in June 2016.

In a December 2016 report, KVC noted that Mother attended only 11 of 36 possible visits with the children because she had several positive drug test results. Between December 2016 and March 2017, Mother continued to miss visits with the children. As of March 24, 2017, Mother had 14 positive drug tests and did not submit to three drug tests.

Mother's drug test results improved between April 2017 and September 2017. She tested negative on all drug tests that she submitted to from May 17, 2017 until September 25, 2017. Mother also consistently attended weekly visitation with the children during this time. In the same timeframe, however, Mother was noncompliant with mental health recommendations, and drug and alcohol assessments. Mother also lacked appropriate housing during this period.

In November 2017, KVC reported that Mother had several recent drug tests that she either failed or did not submit to. Because of this poor performance, Mother had not visited the children since October 8, 2017. Mother told KVC workers that she "is not willing to get a job" and was not going to seek employment. KVC was also concerned about Mother's lack of participation in mental health services and her continued use of illegal substances.

In December 2017—about one and a half years after the children were declared CINC—the State filed a motion to terminate Mother's parental rights. The district court held a hearing on the State's motion.

The termination hearing was held on January 18, 2018. Johnette Clark testified that she is a psychologist and a clinic administrator at the guidance center that Mother attended. Mother was diagnosed in June 2016 with major depressive disorder, cannabis use, opioid use, and other stimulant abuse. Clark recommended that Mother participate in alcohol and drug treatment, including individual and group therapy, together with medication management for her depression.

Clark testified that Mother attended three individual therapy sessions for her depression. She missed some mental health therapy sessions and last attended a mental health therapy session in October 2016. With regard to substance abuse, Mother was scheduled to attend individual therapy sessions about twice a month. She did not complete her individual substance abuse therapy sessions, however, attending only five sessions with the last one occurring in October 2017.

Clark also testified that Mother failed to complete group therapy as recommended. She was required to attend group therapy weekly, but attended only six sessions and the last occurred on December 11, 2017. In total, Mother missed 10 group therapy appointments, including one that was to occur 10 days before the termination hearing. Mother also did not comply with the recommendation for medication management. Mother attended the initial medication appointment in June 2016 and was to follow up in four to six weeks. But she did not follow up until October 2016 and then failed to attend two appointments scheduled in April 2017.

In summary, Clark testified that Mother did not complete either her mental health therapy or her substance abuse therapy. She described Mother's compliance with the reintegration plan at the guidance center as a failure.

Mary Hoffman, a therapeutic case manager with KVC, testified that she was the case manager from the time the children were placed in DCF custody until October 2017. Hoffman reported there were several weeks where Mother had no visits with the children. According to Hoffman, Mother did not have consistent weekly visitation because she either had positive drug tests or missed tests. Mother did complete a parenting program and attended a single family therapy session.

Hoffman testified that Mother had a medical card which covered the fees for treatment at the guidance center. Hoffman indicated that Mother missed some mandatory drug and alcohol assessments after receiving positive drug test results. While Hoffman was involved in the case, Mother failed to obtain appropriate housing. Hoffman explained that Mother and Father were residing with family or friends and had no home of their own.

Hoffman testified that, in her opinion, Mother could not financially support herself and the children. Mother received minimal support in disability payments each month. Hoffman believed that Mother's disability stemmed from a back problem. Although Mother had the opportunity to obtain part-time employment while also receiving disability funds, she never obtained any kind of employment.

Nicole Neil, another therapeutic case manager at KVC, replaced Hoffman in October 2017. Neil testified that Mother visited the children only once since she took the case. This visit occurred on October 8, 2017—more than three months prior to the termination hearing.

Neil summarized Mother's history of drug testing during the time she was assigned to the case. Neil explained that when Mother went to Community Corrections for a planned drug test, she would pass. But when Mother took a random drug test, she would fail. Mother often failed to take scheduled drug tests, including two during October 2017; three during November 2017, and two during January 2018. Mother also tested positive for drugs on two occasions in October 2017. Neil concluded that, based on Mother's drug test results, she continued to use illegal drugs.

Neil testified that Mother obtained appropriate housing with working utilities. When a KVC worker came to Mother's home, however, there was a bed in the living room and unknown people in the home smoking. According to Neil, Mother had paperwork showing that her disability payments would be increasing, and she was compliant in signing releases of information and maintaining regular contact with KVC.

After considering the evidence, the district court terminated Mother's parental rights. The district court determined that Mother showed a lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of the children. The district court noted that Mother continued to use illegal drugs, failed to maintain regular visitation with the children, failed to take advantage of the available mental health treatment, and failed to carry out a reasonable plan towards reintegration.

The district court also found by clear and convincing evidence that Mother was unfit and this conduct or condition was unlikely to change in the foreseeable future. The district court then determined that terminating Mother's parental rights was in the children's best interests. Mother appeals.

ANALYSIS

On appeal, Mother contends the district court erred by terminating her parental rights. Specifically, Mother claims the district court lacked clear and convincing evidence to support its findings that: (1) she was unfit to care for the children; (2) her unfitness was unlikely to change in the foreseeable future, and (3) terminating her parental rights was in the children's best interests. We will separately address Mother's three claims.

At the outset, a brief summary of our standards of review and Kansas law pertaining to termination of parental rights is in order. A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding the care, custody, and control of the parent's child. Before a parent can be deprived of the right to the care, custody, and control of the child, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008); see *In re X.D.*, 51 Kan. App. 2d 71, 73-74, 340 P.3d 1230 (2014) (the right to be the legal parent of a child is a fundamental right).

The Kansas Legislature has specified that the State must prove "by clear and convincing evidence that the child is a [CINC]." K.S.A. 2017 Supp. 38-2250. In addition to CINC adjudications, the clear and convincing evidence standard of proof applies to all termination of parental rights cases. K.S.A. 2017 Supp. 38-2269(a).

> "When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.* by clear and convincing evidence, that the parent's rights should be terminated. [Citation omitted.]" *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011).

8

In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

The Revised Kansas Code for Care of Children provides that the court may terminate parental rights when a child has been adjudicated a CINC and "the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a). The statute lists nonexclusive factors the court must consider in determining unfitness. K.S.A. 2017 Supp. 38-2269(b). The court must also consider a separate list of nonexclusive factors when a child is not in the parent's physical custody. K.S.A. 2017 Supp. 38-2269(c). Any one of the factors in K.S.A. 2017 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2017 Supp. 38-2269(f).

In the case on appeal, the district court relied on the following statutory factors in determining that Mother was an unfit parent:

- Mother emotionally neglected the children. K.S.A. 2017 Supp. 38-2269(b)(4);
- The reasonable efforts by the agencies failed to rehabilitate the family. K.S.A. 2017 Supp. 38-2269(b)(7);
- Mother failed to make reasonable efforts to adjust her circumstances, conduct, or conditions to meet the needs of the children. K.S.A. 2017 Supp. 38-2269(b)(8);
- Mother failed to assure care of the children in the parental home when able to do so. K.S.A. 2017 Supp. 38-2269(c)(1);
- Mother did not maintain regular visitation with the children. K.S.A. 2017 Supp. 38-2269(c)(2); and

- Mother failed to carry out a reasonable plan towards reintegration. K.S.A. 2017 Supp. 38-2269(c)(3).

In challenging the district court's findings on appeal, Mother argues the district court "did not take into consideration her active participation in the case and the case plan tasks." For example, Mother notes that she acquired appropriate housing, attended 18 treatment sessions at the guidance center, and maintained sobriety for a period of time during the case. Mother asserts that, as a result, the district court's findings of unfitness were improper and terminating her parental rights was not in the children's best interests.

Contrary to Mother's assertions, as summarized in the factual background section, our review of the district court's findings show that the district court thoroughly considered her accomplishments and deficiencies during the hearing.

*Mother is Unfit to Properly Care for the Children*

Clear and convincing evidence supports the district court's judgment that Mother is unfit to properly care for the children. The record reveals that Mother did not make reasonable efforts to adjust her conduct to meet the needs of the children, she failed to have consistent visitation, reasonable efforts by the agencies failed to rehabilitate the family, and she failed to carry out a reasonable plan towards reintegration.

Mother failed to stop her persistent use of nonprescribed drugs including methamphetamine, oxycontin, and marijuana. Throughout the proceedings, Mother tested positive for various drugs at least 15 times and missed 13 drug tests. In the three months preceding the termination hearing, Mother tested positive twice and missed 10 drug tests, while having only three negative tests. Although Mother had periods of time where she tested negative for illegal drugs, she was unable to maintain a drug free life for longer than a few months. Mother's drug use left her unable to meet the needs of the children.

10

Mother failed to maintain regular visitation with the children. Because of her positive drug test results and missed tests, Mother was unable to have weekly visitation with the children. In the months leading up to the termination hearing, Mother prioritized drugs over visits with the children. Moreover, Mother's involvement with her drug and mental health treatment was sporadic. She was to obtain individual mental health counseling, medication management, individual substance abuse treatment, and group substance abuse therapy. Regrettably, Mother was not successfully discharged from any of those treatment programs. While Mother attended 18 sessions in all, she failed to follow through with the treatment recommendations.

Although Mother may have obtained appropriate housing, the record shows that she is unable to provide a stable living environment for the children because of her drug use. Even with the help of social agencies, Mother failed to carry out a reasonable plan towards reintegration or to adjust her conduct to meet the needs of the children. Viewed in the light most favorable to the State, we are convinced there is clear and convincing evidence that Mother is unfit to properly care for the children.

*Mother's Conditions of Unfitness are Unlikely to Change in the Foreseeable Future*

When considering a parent's unfitness, the district court must determine if the conduct or condition is likely to change in the foreseeable future. Two principles are instructive in this determination. First, the foreseeable future is measured from the perspective of a child and not an adult. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). Second, the best indication of a parent's future performance is how they performed in the past. *In re M.A.*, No. 110,069, 2013 WL 6799335, at *6 (Kan. App. 2013) (unpublished opinion).

Clear and convincing evidence supports the district court's finding that Mother's conditions of unfitness are unlikely to change in the foreseeable future. Mother did not

11

regularly participate in mental health and drug abuse treatment. Throughout the duration of the case, Mother tested positive for different substances several times. In the three months leading to the termination hearing, Mother never visited the children and often failed to perform drug tests.

After 19 months, Mother was not regularly visiting the children, complying with a reintegration plan, or passing drug tests. Yet, Mother was required to complete the reintegration plan in six months. Mother's lack of participation throughout the case and continual drug use shows that her unfitness would likely not improve over time. As a result, we find by clear and convincing evidence that Mother's conduct which rendered her unfit would not change in the foreseeable future.

*Termination of Mother's Parental Rights is in the Children's Best Interests*

Upon making a finding of unfitness, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g)(1). In making such a decision, the district court must give primary consideration to the physical, mental, and emotional needs of the children. K.S.A. 2017 Supp. 38-2269(g)(1). The district court's determination is reviewed for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014). Abuse of discretion "occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error." 50 Kan. App. 2d at 1116.

In finding that terminating Mother's parental rights was in the children's best interests, the district court observed that three of the children suffer from fairly significant mental health issues. As a result, it is especially important that the children have a safe and stable living environment. Unfortunately, the evidence shows that Mother will provide an environment filled with uncertainty and drugs. We are convinced the district

12

court took full measure of the facts and governing law in making a best interests determination favoring termination. Reasonable persons could agree there is clear and convincing evidence that terminating Mother's parental rights was in the children's best interests.

After reviewing the evidence viewed in the light most favorable to the State, we conclude that a rational fact-finder could have found by clear and convincing evidence that Mother's parental rights should be terminated. The district court did not err in its factual findings or legal conclusion.

Affirmed.