NOT DESIGNATED FOR PUBLICATION

No. 118,186

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of X.A. and E.A.,
Minor Children.

MEMORANDUM OPINION

Appeal from Shawnee District Court; STEVEN R. EBBERTS, judge. Opinion filed March 9, 2018. Affirmed.

*Jonathan B. Phelps*, of Phelps-Chartered, of Topeka, for appellant natural mother.

*Elizabeth A. Billinger*, assistant district attorney, and *Michael F. Kagay*, district attorney, for appellee.

Before GARDNER, P.J., GREEN and SCHROEDER, JJ.

PER CURIAM: The natural mother of X.A. and E.A. appeals the trial court's order terminating her parental rights based on a finding that her unfitness was unlikely to change in the foreseeable future. On appeal, mother maintains that there was insufficient evidence for the trial court to terminate her parental rights. Mother also argues that the termination of rights trial should have been continued so she could complete her mental health assessment which had already been scheduled.

Before terminating one's parental rights, the trial court must find by clear and convincing evidence that the parent is unfit, the conduct or a condition which renders the parent unfit is unlikely to change in the foreseeable future, and that termination of parental rights is in the best interests of the child. K.S.A. 2017 Supp. 38-2269(a), (g)(1).

1

Based on the evidence, the trial court properly determined that mother's conduct or condition was unlikely to change in the foreseeable future and that it was in the children's best interests to terminate mother's parental rights. Accordingly, we affirm.

This case concerns the care and custody of two minor children—X.A. and E.A. On November 10, 2015, the State filed petitions to find both X.A. and E.A. as children in need of care. The case began following two incidents at E.A.'s school in which E.A. threatened "to burn the school down" and stab another student. When mother was summoned to the school regarding the arson threat, she encouraged E.A.'s behavior stating, "Burn it down son, to the ground." When mother was summoned regarding E.A.'s stabbing threat, she was uncooperative and "searched for snacks around the main office stating she had the 'munchies.'"

When contacted by the Kansas Department for Children and Families (DCF), mother downplayed E.A.'s behavior and saw no problem with it. Mother indicated E.A. had received no treatment for his diagnosed ADHD in spite of receiving SSI for the diagnosis. Mother acknowledged that the children would sometimes go without food or showers, but it was by the children's choice and she was not going to force them to do either. X.A. alleged mother would take the children to a car wash to shower. Further, regarding the showering, mother indicated she now had "a phobia of water" and was concerned "about chemicals in the water." Mother acknowledged shoplifting claims, but blamed it on memory problems that caused her to forget to purchase items. Mother had no housing after being evicted, and the family was sleeping at the Topeka Rescue Mission. The family's behavior barred a full-time residence at the Mission.

The children were removed from mother on November 10, 2015, and adjudicated as children in need of care on February 2, 2016. The State ultimately moved to terminate mother's parental rights for both children on December 2, 2016. The State cited K.S.A. 2015 Supp. 38-2269(b)(7) and (8) along with K.S.A. 2015 Supp. 38-2269(c)(2) and (3) as

the statutory basis for parental unfitness. The State noted the following failures of the reintegration plan as factual bases for termination: (1) mother's failure to complete a urinalysis had led to her having no visits with the children; (2) mother's failure to maintain contact with KVC; (3) mother's failure to complete a Regional Alcohol and Drug Assessment Center (RADAC) assessment or mental health assessment; (4) mother's failure to participate in a parenting class; and (5) mother's failure to obtain housing.

The termination hearing occurred on June 30, 2017. Phelicia Glass, the children's therapist, testified that both children suffered from ADHD and behavior disorder relating to adjustment. Glass noted the children's behavior was related to a lack of structure while with their parents. Glass discussed how the children had been taught by mother to steal from grocery stores and had to learn not to steal. Glass noted X.A. did not know how to wipe after using the restroom, and both children had to learn proper personal hygiene. Neither child understood the concept of bedtime. Glass acknowledged that the children had improved while in her care, and credited both medical intervention and living in a structured environment. Glass believed visitation with mother, since she had not seen the children for over a year, "would definitely unsettle their current living arrangement" and "be detrimental and traumatic." Glass did not recommend family therapy without mother first completing individual therapy.

Jamie Dempewolf, the KVC case manager for both children, testified she had very limited contact with mother. Mother would go months at a time without any contact. KVC was unable to make any contact with mother for extended periods of time, whether through phone calls or mail. Dempewolf noted that mother's visitation with the children was contingent on her being consistent, something mother had failed to do. When Dempewolf had a meeting with mother on May 8, 2017, well after the motion to terminate had been filed, mother indicated Dempewolf "was trying to create more work for her; that she had never been notified of these case plan tasks; that these [case plan

3

tasks] were not anything that she'd ever heard that she was supposed to do before." Nevertheless, the case plan tasks had been in place since November 24, 2015.

Dempewolf summarized mother's completion of the case plan tasks as follows: (1) mother obtained housing on May 31, 2017, in the form of a one-bedroom apartment, although Dempewolf questioned whether this was sufficient for mother and both children; (2) mother had not provided proof of stable income; (3) mother had begun providing consistent UAs on April 17, 2017, all of which were negative; (4) Dempewolf received a RADAC assessment on April 27, 2017, which indicated mother did "not seriously intend to change in the next six months;" (5) mother had not done a mental health assessment, although one had recently been scheduled; (6) mother was in the process of scheduling a parenting class, but struggled to timely fill out the proper paperwork. Dempewolf noted that mother struggled to complete the simplest of tasks, and she did not appear for case plan meetings. Dempewolf testified that the children had made significant progress in placement, stating the boys were placed with their grandparents.

On cross-examination, Dempewolf revealed her contact with mother, when she took over the case, had been via disconnected phone numbers and mail that was being returned. It was not entirely clear how Dempewolf eventually made contact with mother, but it seems mother reached out to Dempewolf in October to have contact with the children due to X.A.'s upcoming birthday. Dempewolf stated part of the case plan was for mother to notify KVC within 24 hours of any change in address or phone number.

Nicki Unfred, the KVC supervisor on the case, expressed the difficulty of reaching mother throughout the case:

"[W]e did not ever know where Mother was. We would, at court hearings, and case plans, ask the grandparents if they knew the whereabouts of—actually both parents, and they

4

did not. We would send letters to last known addresses that would come back. We didn't have a valid phone number. We had no way of locating Mother."

Unfred stated that before Dempewolf took the case, Unfred, who functioned as case manager for a time, and the other two previous case managers had little to no contact with mother. Unfred could not state when or if KVC made contact with mother before mother initiated contact with Dempewolf.

Sherry Baer testified on mother's behalf. Baer became acquainted with mother in April 2017 through her work as a sexual assault counselor with the Center for Safety and Empowerment at the YWCA. Mother came to the YWCA after being sexually assaulted by a roommate. After struggling for months to get any response from KVC, Baer finally reached mother's caseworker and quickly realized mother was doomed for failure. Baer opined that mother had an untreated mental illness that effectively made it impossible for her to complete the tasks associated with reintegration without adequate medication. Baer believed mother has a "sequential problem with time and . . . a problem separating reality from fantasy." Baer thought mother had made progress on her issues while under Baer's care. When questioned by the guardian ad litem about mother's ability to parent, Baer stated:

"She has some ability to credit the people who are caring for her children. So she has the capacity to look beyond her own need to be with her children and recognize others are caring for them well. So she has some real strengths in regard to potential care for her children. Could she do it today? No. Does she have the capacity? I think we have a responsibility to find out."

Mother testified she had difficulty contacting KVC. At court hearings mother attended throughout the case, mother only remembered being approached following a hearing by Dempewolf. None of mother's other caseworkers utilized the hearings as an opportunity to get in touch with her. Mother was currently employed at Pepe and Chelas

5

restaurant at the time of the hearing. The only notice mother remembered receiving from KVC was one stating her case manager changed. The State presented April Gibbs, the case coordinator for both children from May to September 2016, as a rebuttal witness. Gibbs testified that Mother spontaneously appeared at the KVC office on July 8, 2016. Mother scheduled an appointment for the next week. Mother never showed up for the meeting and Gibbs was not able to get ahold of mother to follow up.

The trial court issued its decision via a bench ruling on July 3, 2017. The trial court terminated mother's parental rights, listing statutory factors K.S.A. 2017 Supp. 38-2269(b)(7) and (8), and K.S.A. 2017 Supp. 38-2269(c)(2) and (3). The trial court further found the "conduct or conditions causing" mother's unfitness was "not likely to change in the foreseeable future." Further, the trial court found termination was in the best interests of the children. The journal entry reflecting the termination of mother's parental rights was filed on July 6, 2017.

*Did the Trial Court Err in Finding Mother Was Unfit By Conduct or Condition?*

Mother contends the trial court erred when it found her "unfit by conduct or condition." Mother also argues that the trial court should have sua sponte continued the termination hearing until she could get a mental health assessment.

*Standard of Review*

In reviewing a trial court's termination of parental rights, we consider "whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found the determination to be highly probable, *i.e.*, by clear and convincing evidence, that the parent's rights should be terminated." *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). Evidence is "clear and convincing" if "the truth of the facts asserted is highly probable." *In re B.D.-Y.*,

6

286 Kan. 686, 697, 187 P.3d 594 (2008). Additionally, we cannot weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact on review. 286 Kan. at 705.

*The Trial Court's Findings*

Before terminating parental rights, a court must find that the moving party has proven three factors by clear and convincing evidence: (1) the parent is unfit, (2) the conduct or condition which renders the parent unfit is unlikely to change in the foreseeable future, and (3) termination of parental rights is in the best interests of the child. K.S.A. 2017 Supp. 38-2269(a), (g)(1). Again, because mother stipulated to present unfitness, we will start with mother's challenge to the trial court's finding on the second factor.

K.S.A. 2017 Supp. 38-2269(b) and (c) provide a nonexclusive list of factors that trial courts can consider when determining parental fitness. The existence of any one of these statutory factors "standing alone may, but does not necessarily, establish grounds for termination of parental rights." K.S.A. 2017 Supp. 38-2269(f).

In this case, the trial court found that four statutory factors were present. The four factors applicable to its finding read as follows: (1) "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family"; K.S.A. 2017 Supp. 38-2269(b)(7); (2) "lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child"; K.S.A. 2017 Supp. 38-2269(b)(8); (3) "failure to maintain regular visitation, contact or communication with the child or with the custodian of the child"; K.S.A. 2017 Supp. 38-2269(c)(2); and (4) "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home"; K.S.A. 2017 Supp. 38-2269(c)(3).

7

With regard to "failure of reasonable efforts," KVC struggled to make contact with mother regarding the case. See K.S.A. 2017 Supp. 38-2269(b)(7). Letters sent to mother were returned, and phone numbers for mother were invalid. It is clear though that both case workers Gibbs and Dempewolf made contact with mother. Gibbs testified that mother spontaneously appeared at the KVC office on July 8, 2016. Mother scheduled an appointment for the next week. Mother never showed up for the meeting and Gibbs was not able to get ahold of mother to follow up. Dempewolf initially made contact with mother in October 2016. After that contact, Dempewolf did not have contact with mother until April 2017. Dempewolf was finally able to fully review the case plan tasks with mother on May 8, 2017. The KVC was making reasonable efforts considering the circumstances, and those reasonable efforts had failed.

Regarding "lack of effort on the part of the parent," at the time of the termination hearing, mother had only completed a nominal amount of the reintegration plan. See K.S.A. 2017 Supp. 38-2269(b)(8). Dempewolf summarized the reintegration plan as follows:  (1) Mother obtained housing on May 31, 2017, in the form of a one-bedroom apartment, although Dempewolf questioned whether this was sufficient for mother and both children; (2) Mother had not provided proof of stable income; (3) Mother had begun providing consistent UAs on April 17, 2017, all of which were negative; (4) Dempewolf received a RADAC assessment on April 27, 2017, which indicated mother did "not seriously intend to change in the next six months" (on cross-examination it was revealed that this could refer to an unwillingness to change from a sober lifestyle); (5) Mother had not done a mental health assessment, although one had recently been scheduled; (6) Mother was in the process of scheduling a parenting class, but struggled to timely fill out the proper paperwork. Dempewolf noted mother struggled to complete the simplest of tasks, and did not appear for case plan meetings. Mother had not exhibited the necessary effort "to adjust [her] circumstances, conduct or conditions to meet the needs of the [children]." K.S.A. 2017 Supp. 38-2269(b)(8).

8

Looking to "failure to maintain regular visitation, contact or communication," we note mother had no visits or contact of any kind with the children. See K.S.A. 2017 Supp. 38-2269(c)(2). There is no doubt mother failed "to maintain regular visitation, contact or communication." K.S.A. 2017 Supp. 38-2269(c)(2). Lastly, as discussed earlier, the evidence shows that mother failed "to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home." K.S.A. 2017 Supp. 38-2269(c)(3). Thus, the trial court properly found mother unfit and the trial court's determination was clearly supported by clear and convincing evidence.

*Was There Clear and Convincing Evidence to Support the Trial Court's Finding That Mother's Unfitness Was Unlikely to Change in the Foreseeable Future?*

Mother argues that the trial court should have sua sponte continued the termination hearing until she could get a mental health assessment. She argues that her unfitness was likely to change in the foreseeable future. This is especially so given Baer's testimony, which mother maintains the trial court did not consider. Towards the end of mother's brief, she dedicates a paragraph contending the trial court could not have found her unfitness would not "change in the foreseeable future." Mother maintains that a mental health assessment may very well reveal mother could reintegrate.

The State contends that substantial competent evidence was present "to find mother's condition was unlikely to change in the foreseeable future." The State notes the foreseeable future refers to a child's perception of time, not an adult's perception of time. The State is quick to point out that the trial court clearly did consider Baer's testimony, and the testimony at times supported termination. The State also points out a motion for a continuance was not made, "and mother fails to identify a statutory mechanism for the district court to sua sponte continue trials." Lastly, the State again maintains substantial competent evidence was present for the trial court's determination that additional time would not change mother's unfitness.

9

"When this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.* by clear and convincing evidence, that the parent's rights should be terminated. [Citation omitted.]" *In re K.W.*, 45 Kan. App. 2d at 354.

As stated earlier, mother was "unfit by reason of conduct or condition" and this was supported by clear and convincing evidence. The trial court found the "conduct or conditions causing" mother's unfitness was "not likely to change in the foreseeable future." Mother's argument that the trial court should have sua sponte continued the termination hearing is without merit. If this logic was true, the trial court simply would have found mother's unfitness was *likely* "to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a).

As the State correctly points out, the foreseeable future standard is judged from that of a child's perception of time, and not that of an adult. *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008). With this in mind, the children in this case had been out of mother's care for over 18 months. The children were removed on November 10, 2015, and the termination hearing occurred on June 30 and July 3, 2017. Mother had been given 18 months to work the reintegration plan. Even considering the communication issues KVC had with mother, it is clear mother had contact with Gibbs in July 2016. Giving mother the benefit of doubt with regard to communication issues, this still represents nearly a year that mother was likely aware of who she needed to contact regarding taking steps to get her children back. Mother's assertion that the trial court disregarded Baer's testimony is simply untrue. Contrary to mother's assertion, the trial court clearly did consider the testimony of Baer, going so far as to call it "compelling."

If the foreseeable future standard was based on an adult's perception of time, this case might very well call for reversal. Baer indicated that with proper treatment and

10

medication mother might very well be able to parent. Considering, though, the foreseeable future from the children's perspective, which the trial court correctly did, there was clear and convincing evidence to support the trial court's conclusion that mother's unfit condition was "unlikely to change in the foreseeable future."

*Was the Termination of Mother's Parental Rights in the Best Interests of the Children?*

Mother contends it was not in the best interests of the children to terminate her parental rights. Mother claims a permanent custodianship would have been a better option. The State contends that termination was in the best interests of the children. The State summarizes the testimony of Glass, the children's therapist, in maintaining termination was in the best interests of the children. Regarding a permanent custodianship, the State maintains mother never made such a request, and although the State pled a permanent custodianship as an alternative to termination, the evidence supported termination.

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g)(1). In making such a decision, the court shall give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2017 Supp. 38-2269(g)(1). Review of the best-interests determination is made under a "traditional abuse-of-discretion standard." *In re R.S.*, 50 Kan. App. 2d 1105, 1116, 336 P.3d 903 (2014). Abuse of discretion "occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error." 50 Kan. App. 2d at 1116. Lastly, to determine whether factual error exists, this court reviews "any additional factual findings made in the best-interests determination to see that substantial evidence supports them (recognizing that the preponderance-of-the-evidence standard applies in the district court)." 50 Kan. App. 2d at 1116.

11

The trial court found termination was in the best interests of the children. Mother never lists the proper standard of review for the best-interests determination. As a result, mother never indicates how the trial court abused its discretion in making the best-interests determination. It cannot be said "no reasonable person would agree with the district court," and mother makes no allegations of an error of fact or law. See *In re R.S.*, 50 Kan. App. 2d at 1116. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011). The State did alternatively plead for the appointment of a permanent custodian in the motion for termination; however, as discussed previously, termination was the proper disposition in this case. Mother's best interests argument is without merit and the trial court did not abuse its discretion in making the best-interests determination.

Affirmed.