NOT DESIGNATED FOR PUBLICATION

No. 120,244

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of D.E.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed March 29, 2019. Affirmed.

*Christopher Cuevas*, of Kansas City, for appellant natural father.

*SueZanne M. Bishop*, assistant district attorney, and *Mark A. Dupree Sr.*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

PER CURIAM:  The father of D.E. (Father) appeals the district court's order terminating the parental rights to his son, D.E. (YOB 2013). On appeal, Father contends the State produced insufficient evidence to support the district court's decision to terminate his parental rights. After careful review of the parties' briefs and the record on appeal, we find no error in the district court's termination order. Accordingly, we affirm the district court's judgment terminating Father's parental rights to D.E.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother are the biological parents of D.E. Before the current action, D.E. was in the custody of the Department for Children and Families (DCF) in a 2013 case. However, D.E. reintegrated with Mother in 2015.

1

In addition to D.E., Father is the biological father of other children. Before this action took place, Father's parental rights to three children were terminated in a 2004 case, a 2005 case, and a 2014 case. The 2004 case involved one of Mother's biological children, S.F. Father was S.F.'s putative father. Father's and Mother's parental rights to S.F. were terminated after S.F. was found suffering from 24 fractures and many burns at 14 months of age. Mother admitted that Father was rough with S.F. As a result of S.F.'s injuries, Father pled guilty to intentional torture of a child.

Father is also the biological father of J.C., who resides with his mother in Missouri. In July 2017, DCF received a report that J.C.—who was about six months old—suffered an "extensive injury." J.C had spent the night with Father in Kansas before his mother took him to Children's Mercy Hospital. J.C. suffered seven rib fractures that were healing, abusive head trauma, and a possible fractured tibia. J.C. was having seizures and was foaming from his mouth. Hospital staff revealed that J.C. sustained bleeding on the top, middle, and back of his brain. J.C.'s injuries resulted in permanent brain damage. The State charged Father with several crimes as a result of J.C.'s injuries.

Returning to the case on appeal, D.E. also underwent an examination by a nurse practitioner, Amy Terreros. Terreros observed that D.E.'s lower back and abdomen had a pattern of several linear scars in different stages of the healing process. D.E. also had many bug bite scars. Terreros diagnosed D.E. as a victim of child physical abuse. D.E. was in the care of Father and Mother before he and J.C. were taken to the hospital.

On August 1, 2017, the State petitioned the district court to declare D.E. as a child in need of care (CINC). The State's petition outlined the facts leading up to the petition being filed. The petition noted that J.C.'s mother had concerns of domestic violence by Father. J.C.'s mother also reported that Father choked her while she was pregnant and that she filed several restraining orders on Father.

Additionally, the State's petition listed Father's prior arrests for attempted aggravated indecent liberties with a child, drug possession, criminal damage to property, felony theft, harassment by telecommunication device, and criminal trespassing. Following the State's petition, the district court entered an order placing D.E. in the temporary custody of DCF. The district court later adjudicated D.E. as a CINC.

In September 2017, the State moved to terminate Father's parental rights over D.E. After the district court adjudicated D.E. as a CINC, it made several interim orders designed to facilitate reintegration. But Father could not participate in reintegration efforts because he remained in jail pending the resolution of his criminal case for the abuse leading to this action. The district court continued the hearing on the State's motion to terminate Father's parental rights until Father received a jury trial in his criminal case.

In April 2018, a jury found Father guilty of child abuse, aggravated battery, and aggravated child endangerment for physically abusing J.C.

The district court held a termination hearing on September 4, 2018. The parties agreed to proceed with a trial by proffer instead of presenting formal evidence. The State proffered evidence of Father's prior CINC cases. The State first noted that D.E. was previously involved in a 2013 CINC proceeding. And Father previously had custody of children who were adjudicated CINC and to whom his parental rights were terminated. The State asserted that these prior adjudications and parental rights terminations resulted in a statutory presumption of Father's unfitness under K.S.A. 2018 Supp. 38-2271(a).

The State also proffered evidence of Father's criminal convictions. The State pointed to Father's recent convictions for child abuse, aggravated battery, and aggravated child endangerment, which resulted from the incident that initiated the current CINC case. Next, the State highlighted Father's 2004 conviction of child abuse and his 1999

conviction of attempted aggravated indecent liberties with a child. The State advised that Father's prior convictions also created a presumption that he was unfit to care for a child.

The State suggested that Father's criminal convictions and prior CINC cases showed that he was unfit to care properly for a child based on the factors listed in K.S.A. 2018 Supp. 38-2269(b). Father's conduct towards his children, including D.E., was physically cruel and abusive. He physically, mentally, or emotionally neglected D.E. because of his incarceration. The reasonable efforts by child caring agencies have failed to rehabilitate the family for almost 20 years. And Father demonstrated a near-20-year lack of effort to adjust his circumstances, conduct, or conditions to meet the needs of D.E. or any of his children.

The guardian ad litem (GAL) also proffered evidence at the termination hearing about Father's problems with housing and drug use. The GAL explained that Father's inability to obtain appropriate housing created a significant barrier to reintegration with his children in the prior CINC cases. Additionally, evidence suggested that Father "continued to smoke marijuana through every single case we've ever had with him." The GAL believed these issues would continue because Father never resolved his housing problems and he never received drug treatment.

Father began his proffer by stating, "I'm just ready to get it over with. Whatever you decide today, you decide." Father stated he would always love his kids, despite the allegations made throughout the CINC cases. Father insisted that J.C.'s injuries did not happen under his care and that he was wrongfully convicted. He explained, "I'm gonna clear my name of these allegations, no matter how long it takes."

At the close of the termination hearing, the district court considered Father's recent convictions. Although Father planned on challenging his convictions, the district court noted the unlikelihood of those convictions being set aside. The district court then

explained that Father would likely receive a long sentence for his convictions given his criminal history. After reviewing Father's criminal history and prior CINC cases, the district court identified that "many of those are the same things that we're dealing with in this case." And the district court found no significant change occurred since those cases which would allow it to conclude that Father would be positioned to parent D.E. in the near future.

The district court found that the State established a presumption of Father's unfitness under K.S.A. 2018 Supp. 38-2271(a). The district court also determined that Father failed to overcome that presumption of unfitness. Independent of any statutory presumptions, the district court found by clear and convincing evidence that Father was an unfit parent and that his unfitness is unlikely to change in the foreseeable future. It then determined that terminating Father's parental rights was in D.E.'s best interests. Accordingly, the district court terminated Father's parental rights to D.E.

Father appeals.

ANALYSIS

On appeal, Father contends the district court erred by terminating his parental rights. Father claims the district court lacked sufficient evidence to support its findings that (1) he was unfit to care for a child; (2) his unfitness was unlikely to change in the foreseeable future, and (3) terminating his parental rights was in D.E.'s best interests.

A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution in the relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). Accordingly, the State may extinguish the legal bonds between parent and child only upon clear and convincing

5

proof of parental unfitness. K.S.A. 2018 Supp. 38-2269(a); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

Before terminating parental rights, the State must prove by clear and convincing evidence that the parent is unfit to care properly for a child and the conduct or condition which renders the parent unfit is unlikely to change in the foreseeable future. K.S.A. 2018 Supp. 38-2269(a). The district court must also find by a preponderance of evidence that termination of parental rights is in the best interests of the child. K.S.A. 2018 Supp. 38-2269(g)(1).

In reviewing the district court's determinations of unfitness and unlikelihood of change, we review the record in the light most favorable to the State and determine whether a rational fact-finder could have found the decision "highly probable, *i.e.*, [supported] by clear and convincing evidence." *In re B.D.-Y.*, 286 Kan. at 705. When conducting this review, we do not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. 286 Kan. at 705. Clear and convincing evidence "is an intermediate standard of proof between a preponderance of the evidence and beyond a reasonable doubt." 286 Kan. at 691.

When determining unfitness, the district court must consider a nonexclusive list of factors set forth in K.S.A. 2018 Supp. 38-2269(b) and (c). Any one of the factors in these subsections may, but does not necessarily, establish grounds for terminating parental rights. K.S.A. 2017 Supp. 38-2269(f). The district court may also rely on one or more of the 13 statutory presumptions of unfitness outlined in K.S.A. 2018 Supp. 38-2271(a) if those presumptions are proven by clear and convincing evidence. When a presumption under K.S.A. 2018 Supp. 38-2271(a) applies, the parent has the burden to rebut the presumption of unfitness by a preponderance of the evidence. K.S.A. 2018 Supp. 38-2271(b).

In this case, the district court relied on the following statutory factors to find Father unfit:

- Father engaged in conduct towards a child of a physically, emotionally, or sexually cruel or abusive nature. K.S.A. 2018 Supp. 38-2269(b)(2).

- Father engaged in physical, mental, or emotional neglect of a child. K.S.A. 2018 Supp. 38-2269(b)(4).

- Father received a felony conviction and imprisonment. K.S.A. 2018 Supp. 38-2269(b)(5).

- The reasonable efforts by child caring agencies failed to rehabilitate the family. K.S.A. 2018 Supp. 38-2269(b)(7).

- Father failed to make reasonable efforts to adjust his circumstances, conduct, or conditions to meet the needs of the child. K.S.A. 2018 Supp. 38-2269(b)(8).

Additionally, the district court found that Father failed to rebut the following statutory presumptions of unfitness:

- Father has previously been found to be an unfit parent. K.S.A. 2018 Supp. 38-2271(a)(1).

- Father has twice before been convicted of a crime specified in article 34, 35, or 36 of chapter 21 of the Kansas Statutes Annotated, before their repeal, or articles 54, 55, or 56 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 21-6104, 21-6325, 21-6326, or 21-6418 through 21-6421, or comparable offenses under the laws of another jurisdiction, or an attempt or attempts to commit such crimes and the victim was under the age of 18 years. K.S.A. 2018 Supp. 38-2271(a)(2).

- A child in the physical custody of Father has been adjudicated a CINC on two or more prior occasions. K.S.A. 2018 Supp. 38-2271(a)(3).

Although the district court determined that Father failed to rebut these statutory presumptions of unfitness, Father does not challenge this basis for terminating his parental rights. When a district court provides alternative bases to support its ultimate ruling on an issue and an appellant fails to challenge the validity of *both* alternative bases on appeal, an appellate court may decline to address the appellant's challenge to the district court's ruling. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280, 225 P.3d 707 (2010). Since Father fails to challenge his presumptions of unfitness, we could simply address whether terminating his parental rights was in the best interests of the child. But, given the importance of the subject matter, we will consider Father's arguments and find that clear and convincing evidence supported the termination of his parental rights.

*Unfitness to Care Properly for a Child*

Clear and convincing evidence supports the district court's determination that Father is unfit to properly care for a child. The record shows that Father physically abuses children, he has a felony conviction and served time in prison, he failed to make reasonable efforts to adjust his conduct to meet the needs of D.E., and the reasonable efforts by child caring agencies never rehabilitated the family.

Father does not challenge the district court's findings that K.S.A. 2018 Supp. 38-2269(b)(2), (b)(4), (b)(5), (b)(7), and (b)(8) weighed in favor of his unfitness. Instead, Father argues that the district court should not have considered his recent convictions of child abuse, aggravated battery, and aggravated child endangerment because he did not commit the crimes. But Father fails to recognize that we review the record in the light most favorable to the State. Moreover, Father presented no evidence at the termination hearing which refutes the jury's convictions.

8

In the light most favorable to the State, Father brutally abused several of his children. Mother admitted that Father was rough with his children. One child suffered 24 fractures and several burns. Another had seven fractures and sustained brain damage. And an examiner concluded that D.E.'s scars on his back and abdomen were caused by physical abuse. As a result of this abuse, Father was found guilty of intentional torture of a child, child abuse, aggravated battery, and aggravated child endangerment. In addition to his abuse of children, J.C.'s mother reported that Father choked her while she was pregnant. Father's abuse alone is clear and convincing evidence that he is an unfit parent.

Father's recent abuse for which he was convicted came after D.E. was previously adjudicated a CINC and reintegrated with Mother. In this prior action, Father was unable to obtain appropriate housing and refused to quit drugs. Although Father participated in parenting classes and the Safe Kids program, he did not adjust his abusive conduct. Instead, Father inflicted scars on D.E. and gave his six-month-old son permanent brain damage.

We find by clear and convincing evidence that Father is unfit to care properly for D.E. or any child.

*Unlikelihood of Unfitness to Change in the Foreseeable Future*

When considering a parent's unfitness, the court must determine if the conduct or condition is likely to change in the foreseeable future. Two principles are instructive in this determination. First, the foreseeable future is measured from the perspective of a child and not an adult. *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). Second, the best indication of a parent's future performance is how they performed in the past. *In re M.A.*, No. 110,069, 2013 WL 6799335, at *6 (Kan. App. 2013) (unpublished opinion).

Clear and convincing evidence supports the district court's finding that Father's conditions of unfitness are unlikely to change in the foreseeable future. Father's convictions for his physical abuse of children began about 20 years ago. In a 1999 case, Father was convicted of attempted aggravated indecent liberties with a child. About five years later, Father pled guilty to intentional torture of a child after he physically abused his child, causing burns and 24 bone fractures. Father then lost his parental rights to three children in three separate cases. Despite Father's convictions and prior termination actions, he continued to physically abuse his children.

In addition to Father's continual record of abusing children, he did not stop using drugs outside incarceration. Even though this drug use was a concern throughout prior CINC proceedings, Father failed to participate in drug treatment. Father's history of physically abusing children, drug use, and imprisonment shows that his unfitness would likely not change in the foreseeable future. As a result, we find there is clear and convincing evidence that Father's conduct which rendered him unfit will not change in the foreseeable future.

*Best Interests of the Child*

Upon making a finding of unfitness, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2018 Supp. 38-2269(g)(1). In making such a decision, the court must give primary consideration to the physical, mental, and emotional needs of the child. K.S.A. 2018 Supp. 38-2269(g)(1). The district court's determination is reviewed for an abuse of discretion. *In re R.S.*, 50 Kan. App. 2d at 1116. Abuse of discretion "occurs when no reasonable person would agree with the district court or the district court premises its decision on a factual or legal error." 50 Kan. App. 2d at 1116.

Father does not contend the district court made an error of fact or law. As a result, we review whether a reasonable person could come to the same conclusion as the district court.

Reasonable persons could agree that terminating Father's parental rights was in D.E.'s best interests. Before D.E. turned four years old, he had twice been placed in DCF custody. The more recent occurrence happened because the State discovered that Father physically abused D.E. and subjected another child to abuse severe enough to cause bone fractures and brain damage. D.E. deserves a safe and stable living environment, not scars from physical abuse. We are convinced that the district court took full measure of the facts and governing law in making a best interests determination favoring termination. The district court did not abuse its discretion when it determined it was in the best interests of D.E. to have Father's parental rights terminated.

After reviewing the evidence viewed in the light most favorable to the State, we conclude that a rational fact-finder could have found by clear and convincing evidence that Father's parental rights should be terminated, and that the termination was in the child's best interests. The district court did not err.

Affirmed.