NOT DESIGNATED FOR PUBLICATION

No. 122,611

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of D.O., B.O., and R.O.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed February 5, 2021. Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before HILL, P.J., MALONE and BUSER, JJ.

PER CURIAM: Father appeals the termination of his parental rights as to D.O., B.O., and R.O. He makes two contentions. First, Father asserts the district court's finding that his unfitness was unlikely to change in the foreseeable future was not supported by clear and convincing evidence. Second, he argues the district court abused its discretion in finding that parental termination was in the best interests of his children.

Upon our review, we find no reversible error and, therefore, affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2018, the State filed a Child in Need of Care (CINC) petition alleging that K.O. (born in 2001), D.O. (born in 2004), B.O. (born in 2006), and R.O.

1

(born in 2010) were children in need of care. The CINC petition alleged that Mother and Father had a history of domestic violence, substance abuse, encounters with law enforcement, and unstable housing. K.O. turned 18 years old while the case was pending, was released from the care of the Kansas Department for Children and Families (DCF) and was dismissed from the case.

Before the CINC petition was filed, DCF had received several intake reports raising concerns regarding the children's welfare. In March 2018 and again in June 2018, DCF received reports that the children were without adequate adult supervision. DCF referred the family to St. Francis Community Services (St. Francis) after the June 2018 report. But Mother and Father continued to have contact with law enforcement and continued to use illegal drugs, including methamphetamine. Mother also attempted to withdraw the children from school, and the children had multiple absences. Father was arrested in early September 2018 for domestic violence against Mother. In late September 2018, Mother called DCF and informed the agency that she could no longer care for her children. Mother inquired if she could leave the children with K.O. As a result, the State placed the children in protective custody and filed the CINC petition.

In October 2018, the district court held a temporary custody hearing. The court issued several orders to Father, which included completing a clinical assessment; abstaining from the use of alcohol and illegal drugs; obtaining stable housing; completing classes on anger management, parenting, budgeting, nutrition, and couples counseling; submitting to drug tests; and obtaining a substance abuse evaluation. In November 2018, Father submitted a statement of no contest to the CINC petition.

Almost a year later, in September 2019, the State moved for a finding of unfitness and termination of Mother's and Father's parental rights. The termination hearing occurred in October 2019. Mother voluntarily relinquished her parental rights on the day of the hearing.

After both parties presented evidence at the termination hearing, the district court found that Father was unfit by reason of conduct or condition which rendered Father unable to care properly for the children and the conduct or condition was unlikely to change in the foreseeable future. The district court cited the following statutory factors in support of its termination order:

- Failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family under K.S.A. 2019 Supp. 38-2269(b)(7);
- Lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child under K.S.A. 2019 Supp. 38-2269(b)(8);
- Failure to maintain regular visitation, contact or communication with the child, or with the custodian of the child under K.S.A. 2019 Supp. 38-2269(c)(2); and
- Failure to carry out a reasonable plan approved by the court directed toward the integration of the child into a parental home under K.S.A. 2019 Supp. 38-2269(c)(3).

The district court also held that the best interests of the children would be served by termination of Father's parental rights.

Father appeals.

WAS FATHER'S UNFITNESS UNLIKELY TO CHANGE IN THE FORESEEABLE FUTURE?

On appeal, Father does not challenge the district court's finding of unfitness to parent his children. But he does claim there was insufficient clear and convincing evidence to support the district court's holding that his unfitness was unlikely to change in the foreseeable future.

3

If a child has been adjudicated a child in need of care, then a district court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2019 Supp. 38-2269(a). After making a finding of unfitness, the district court must consider whether termination of parental rights is in the best interests of the child. K.S.A. 2019 Supp. 38-2269(g)(1).

Our standard of review provides that when an appellate court reviews a district court's termination of parental rights, it should "'consider whether, after review of all the evidence, viewed in the light most favorable to the State,'" it is "'convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parent's right should be terminated.' [Citation omitted.]" *In re K.H.*, 56 Kan. App. 2d 1135, 1139, 444 P.3d 354 (2019). In reviewing a district court's decision based on a clear and convincing evidence standard, an "appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008).

The revised Kansas Code for Care of Children authorizes a district court to terminate parental rights based on certain statutory findings made after a child has been adjudicated a child in need of care. K.S.A. 2019 Supp. 38-2269(a). Ordinarily, the district court evaluates whether a parent is unfit by considering a nonexclusive list of factors provided in K.S.A. 2019 Supp. 38-2269(b) and (c). Any one of the factors standing alone may provide sufficient grounds for termination. K.S.A. 2019 Supp. 38-2269(f).

As just noted, the district court relied on four statutory factors to find that Father was an unfit parent and was unlikely to change his parenting behavior in the foreseeable future. Two of the statutory factors, K.S.A. 2019 Supp. 38-2269(b)(7) and K.S.A. 2019 Supp. 38-2269(c)(2) will be considered separately. Two other factors, K.S.A. 2019 Supp.

4

38-2269(b)(8) and K.S.A. 2019 Supp. 38-2269(c)(3) will be analyzed together given that they relate to Father's lack of effort to change his behaviors to comply with court ordered parenting goals designed to meet the needs of the children. Finally, we will consider whether there was sufficient evidence to prove that termination of parental rights was in the best interests of the children.

*Failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family, K.S.A. 2019 Supp. 38-2269(b)(7)*

K.S.A. 2019 Supp. 38-2269(b)(7) provides that when determining the fitness of a parent, one of the factors the court may consider is the "failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family." This statutory factor focuses on reasonable efforts expended by service providers to achieve the goal of rehabilitation. As we have observed, this factor does not "require proof that the appropriate agencies made a herculean effort to lead the parent through the responsibilities of the reintegration plan." *In re B.T.*, No. 112,137, 2015 WL 1125289, at *8 (Kan. App. 2015) (unpublished opinion). It also does not require the public or private agencies to provide every possible resource to the family; only that the agencies made a reasonable effort. *In re A.J.S.*, No. 95,283, 2006 WL 2043504, at *3 (Kan. App. 2006) (unpublished opinion).

Araceli Martinez, a social worker and permanency specialist with Saint Francis, was assigned to work with Father and Mother to achieve reintegration with their children. Martinez worked with the family members throughout the CINC proceedings. Central to her responsibilities, Martinez attempted to facilitate Father's compliance with the court ordered reintegration plan. This plan included submitting to a clinical assessment, obtaining housing, completing a substance abuse evaluation, undergoing drug tests, and attending classes in parenting, anger management, budget, and nutrition. Additionally,

5

Martinez was tasked with stabilizing the children in their out-of-home placements, supervising visitations with the children, and facilitating therapy.

Meredith Whaley, a licensed clinical specialist social worker and reintegration supervisor for Saint Francis with 10 years' experience in the field of family reintegration, supervised the reintegration process.

As more fully discussed later, both Martinez and Whaley testified at the termination hearing regarding the numerous efforts made by Saint Francis to rehabilitate Mother and Father and to reintegrate the family. Additionally, comprehensive reports to the district court that Martinez prepared, and Whaley approved, were admitted in evidence as State's Exhibits 1, 2, and 3. These reports memorialized the many efforts made by Saint Francis staff and their associates in the failed effort to rehabilitate Father and reunite him with his children.

Upon our review of the record, we are convinced there was clear and convincing evidence of a failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family. K.S.A. 2019 Supp. 38-2269(b)(7).

*Lack of effort on the part of the parent to adjust the parent's circumstances, conduct, or conditions to meet the needs of the child, K.S.A. 2019 Supp. 38-2269(b)(8) and failure to carry out a reasonable plan approved by the district court directed toward the integration of the child into the parental home, K.S.A. 2019 Supp. 38-2269(c)(3)*

The district court determined that two statutory factors, K.S.A. 2019 Supp. 38-2269(b)(8) and K.S.A. 2019 Supp. 38-2269(c)(3) were applicable in establishing Father's parental unfitness. As to the latter factor, the district judge stated:

> "I will make a finding that there's failure to carry out a reasonable parenting plan approved by the Court directed towards the reintegration of the child into the parental

6

home. There's no parental home, and there are several major court orders that were not complied with. That's his conduct. . . . That was on him."

Regarding Father's parenting failures, the district judge focused on the likelihood that Father's inability to parent the children would not change in the foreseeable future:

"How do I predict the future? . . . The only way that I can make the best guess is look at the past behavior. And unless somebody has shown that they are willing to make significant changes in their life during the past year, it's pretty safe to assume that they're going to be in the same position that they are today six months from now, twelve months from now."

. . . .

"I will make a finding that it's unlikely that his condition is going to change in the foreseeable future. I think pretty much he is lost with [Mother], and I don't think [Father] can handle the kids anyway. I don't think he's done anything to show any parenting skills. He hasn't shown us any testimony that he has parenting skills."

There was considerable evidence presented that Father failed to comply with the court ordered plan to reintegrate with the children and improve his inadequate parenting. This evidence focused on several areas including housing, substance abuse, parenting skills, mental health concerns, marital concerns, and employment.

Father's failure to obtain and maintain suitable housing for the children was a significant factor in the district judge's ruling:

"But here's the problem. And this has been a long-term problem. It's [Father's] testimony. He is the one that is hurting himself. And he is hurting the kids. He testified he can't take them home today because he doesn't have a home. If I were to say he can have the kids back, there's no place to take them except for a hotel room. And that's been the case since this case was open, a year.

. . . .

"There's no home to go to. I'm not going to put them in a hotel room. I can't do that."

7

Father made no progress on the district court's parenting plan to obtain and maintain stable housing. Martinez testified that Father had lived in more than seven locations since the case was filed. During the proceedings, Father and Mother proposed moving from Wichita to Eureka because Mother believed she could not stay drug free in Wichita. Martinez was concerned that the move would hinder Father's ability to complete court orders and she discussed this concern with him, but Father moved anyway. At the hearing, Father testified that due to another court's order, he was prohibited from living in the Eureka home. According to Father, this was because he was charged with disorderly conduct and criminal damage to property after becoming angry at Mother and kicking in the front door.

At the time of the termination hearing, Father had been staying in a hotel for a couple weeks. Mother and K.O. also stayed with him at times during that period. Before that, Father stayed at a different hotel. Father explained that he had to move frequently for his own safety because he worked as a confidential informant for the police. At the termination hearing, he testified that he planned to look for stable housing on Friday when he got paid.

Father's substance abuse was another significant concern discussed at the termination hearing. The district judge highlighted, "The fact that [Father] never went to treatment for his substance abuse issue, has not provided any evidence that I've seen of any [Narcotics Anonymous] (NA) or sponsor."

Both Father and Martinez testified that Father had completed a required clinical assessment. One recommendation from the clinical assessment was for Father to obtain a medical evaluation, but he claimed he could not complete this task because he did not have health insurance. The clinical assessment also recommended that Father complete a substance abuse evaluation, attend NA meetings, and go to couples counseling.

8

Father obtained a substance abuse evaluation at the beginning of the case. But, according to him, the person who conducted the evaluation quit her job and he never received any treatment recommendations. Martinez testified that Father was directed to complete another substance evaluation if he could not provide verification of the first one. Father did not obtain another evaluation for several months—until the Friday before the termination hearing.

Evidence of Father's longstanding illicit drug use was presented at the termination hearing. Father testified that he had not used methamphetamine for three months before the hearing. A drug test taken two weeks before the hearing was negative. A hair follicle test at the beginning of the month, however, was positive for methamphetamine. Father missed most of his drug test appointments, including 11 requests made between February 2019 and September 2019. Father said that he did not attend the drug testing because he was living in Eureka and he did not have any transportation.

Father testified that some of his positive drug tests could have resulted from his work as a confidential informant because he is around people who are using drugs. He believed the drugs could have entered his system from smoke being blown in his face. He also testified that the only reason he used drugs was because Mother was an addict who would bring illicit drugs into the home. Yet, Father continued the relationship with Mother.

Father asserted that he attended some NA meetings early on, but he provided no verification. Regardless, he did not participate in NA for long. Father testified that he attended an NA meeting right before the hearing, but without proof of attendance. If Father attended NA meetings in the two months before the termination hearing, it does not demonstrate sustainable change for someone who described himself as an addict for the past 15 years.

Father's inability to demonstrate basic parenting skills was exemplified during visitations with his children. Whaley described the visits as unhealthy and chaotic. While she said it was normal for families to fight and argue occasionally, the degree to which the conduct occurred in this case interfered with the case workers' ability to redirect and manage the visits. The parents also discussed subjects with their children, like living in a hotel, that caused the children stress. According to the St. Francis staff, Mother and Father expressed negative feelings about the foster parents and made the children feel like they had to choose between their biological parents and their foster parents.

Father countered that the visitations were chaotic because his children reported that they were being abused by their foster parents. St. Francis staff was aware of Father's apprehensions. But the children did not report any abuse directly to St. Francis and an investigation did not uncover evidence of abuse.

St. Francis stopped the visitations in June 2019. Before continuing, the agency recommended family therapy. Martinez testified that it took a while to find a therapist for the family. The therapist wanted to begin by meeting with the children individually. At the time of the termination hearing, Father's first session was scheduled for the next week.

On appeal, Father asserts that the State did not provide him enough time to complete the permanency plan. In support, he notes that family therapy was delayed because St. Francis had difficulty locating a therapist and, when it did, the therapist met with the children individually before he could participate. The State responds that family therapy was not the only court order Father failed to complete.

We are persuaded that the State has the better argument. While the delay in Father's participation in family counseling was not his fault, as discussed earlier, there were numerous other areas where Father's participation in the permanency plan was

minimal or nonexistent. For example, Father testified that he completed a parenting class as directed by the district court. Martinez, however, testified that Father never provided proof of completing a parenting class. In fact, the organization that Father said sponsored the parenting class did not offer parenting classes. The class Father completed was a sexual awareness class.

Concerns were also raised at the termination hearing regarding Father's mental health. Although the clinical assessment recommended that Father obtain a medication evaluation, Father did not complete this task. This failure was particularly troubling because Father testified that he was on disability for depression but was not taking any medication or obtaining therapy to address this mental health condition.

Whaley recommended terminating Father's parental rights due to his failure to make meaningful changes to meet the children's needs. One area of concern was Father's complaint that Mother was the reason the children were in DCF's custody, but he continued re-engaging in a relationship with her.

Father and Mother attended couples counseling when the case began but discontinued the sessions. A couple months before the termination hearing, Father and Mother began couples therapy with Father's pastor. However, Father said he attended the last few sessions by himself because he is no longer in a relationship with Mother. Father described his marital relationship with Mother as an on-again/off-again relationship for the past 20 years. Father's relationship with Mother was worrisome to case workers because he reported that Mother prevented him from completing his case orders. Father blamed Mother for bringing illicit drugs into their home and for the children being in state custody. Of note, while Father testified that he was no longer in a relationship with Mother, he also testified that she was living with him as recently as two weeks before the termination hearing.

Another one of Father's court orders was to complete anger management classes. Father testified that he completed a course called Thinking for a Change and that it was an anger management course. He claimed that he attended this class for twice a week for the two months before the termination hearing. On the other hand, Martinez testified that Father did not complete anger management classes, and that St. Francis did not refer Father to the Thinking for a Change course. Father was referred to anger management resources, but there is no indication that he availed himself of any beneficial assets.

Finally, evidence showed that Father was in dire financial straits. According to Father, he receives about $700 per month in state disability payments for depression and modest sums for occasionally making introductions or drug buys as a confidential informant for law enforcement. Father indicated his law enforcement income was sporadic, ranging from no payments to $600 per month. The lack of financial resources adversely impacted his ability to obtain and maintain stable housing.

In summary, while Father had a year to adjust his circumstances, conduct, or conditions to meet the children's needs and comply with court orders, the evidence clearly and convincingly showed that Father failed to exert sufficient effort to obtain housing, avoid substance abuse, exhibit parental skills, maintain mental health, repair marital relations, obtain anger management, and provide financial security. Father's parenting deficiencies were serious and persistent.

All things considered, we find clear and convincing evidence that termination was warranted under both K.S.A. 2019 Supp. 38-2269(b)(8) and K.S.A. 2019 Supp. 38-2269(c)(3). Moreover, given Father's longstanding inability to change his circumstances to meet his children's needs and Father's poor performance in complying with the district court's parenting plan, the district court did not err in concluding that this parental unfitness will continue into the foreseeable future.

*Failure to maintain regular visitation, contact or communication with the child, or with the custodian of the child under K.S.A. 2019 Supp. 38-2269(c)(2)*

The district court found that Father failed to maintain regular visitation, contact, or communication with his children or their custodians. See K.S.A. 2019 Supp. 38-2269(c)(2). On appeal, Father contends that he was prevented from visiting his children by St. Francis staff due to the agency's decision to engage in family therapy before reinstating the visits. Because the family therapist scheduled Father's counseling last, it did not take place prior to the termination hearing.

The State counters that Father is accountable for the chaos that resulted in the suspension of the visitations. Moreover, the State highlights Father's decision to move from Wichita to Eureka which caused transportation difficulties.

We are persuaded that Father has a meritorious argument. Although there is evidence of a failure to maintain regular visitation, contact, or communication with the children, the decision by St. Francis to suspend visitations pending family therapy mitigates Father's failure in this regard. The proof in support of this statutory factor, K.S.A. 2019 Supp. 38-2269(c)(2), does not rise to the level of clear and convincing evidence.

*Conclusion*

In conclusion, we find no error in the district court's determination that there was clear and convincing evidence that Father was unfit to parent his children by reason of conduct or condition which rendered him unable to care properly for them and that the conduct or condition was unlikely to change in the foreseeable future. K.S.A. 2019 Supp. 38-2269(a). In particular, there was substantial competent evidence to support the finding of statutory factors K.S.A. 2019 Supp. 38-2269(b)(7), (b)(8), and (c)(3). Any one of these

13

three factors standing alone provide sufficient grounds for termination. See K.S.A. 2019 Supp. 38-2269(f).

We acknowledge Father's complaint that there was insufficient proof that he would not be able to develop his parenting skills in the foreseeable future. But Kansas law recognizes that children experience the passage of time differently than adults. See K.S.A. 2019 Supp. 38-2201(b)(4). As our court has stated: "In determining whether a parent's conduct or condition is likely to change in the foreseeable future, the foreseeable future is to be considered from the child's perspective, not the parents', as time perception of a child differs from that of an adult." *In re S.D.*, 41 Kan. App. 2d 780, Syl. ¶ 9, 204 P.3d 1182 (2009); see also *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings "in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's").

In making its ruling, the district court directly questioned whether Father's parental unfitness would change for the better in the foreseeable future. As referenced earlier, the district judge looked at Father's past behavior and concluded, "unless somebody has shown that they are willing to make significant changes in their life during the past year, it's pretty safe to assume that they're going to be in the same position that they are today six months from now, twelve months from now." After considering the evidence, the district judge informed Father, "I will make a finding that the Court considered child time. The case has been on file over a year. Your kids have been living with strangers because you couldn't or wouldn't do what you were supposed to do in a timely manner."

The district court's remarks are consonant with longstanding Kansas law which provides that in considering the question of the foreseeable future, a court may predict a parent's future unfitness based on his or her history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). The district court's judgment that Father is unfit to parent his

children now and in the foreseeable future is supported by substantial competent evidence.

## WAS TERMINATION IN THE BEST INTERESTS OF THE CHILDREN?

For his second issue on appeal, Father claims there was not substantial competent evidence that parental termination was in the children's best interests. He asserts there was no evidence presented as to how termination would impact his children. Father argues that two of the three children reported that they did not want to be adopted, thus, he claims permanency is not achievable for those children with anyone other than Father.

After making a finding of unfitness, the district court must consider whether termination is in the best interests of the child. K.S.A. 2019 Supp. 38-2269(g)(1). "The determination of what is in a child's best interests is inherently a judgment call," so this court reviews the decision for abuse of discretion. *In re M.H.*, 50 Kan. App. 2d 1162, 1175, 337 P.3d 711 (2014). An abuse of discretion occurs when no reasonable person would agree with the district court or if the court bases its decision on an error of fact or law. *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014). A district court also exceeds its broad latitude if its ruling is "arbitrary, fanciful, or unreasonable." *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

The district court found by a preponderance of evidence that termination of parental rights was in the best interests of the children. See K.S.A. 2019 Supp. 38-2269(g)(1); *In re R.S.*, 50 Kan. App. 2d 1115-16. In making this determination, the district court must "give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2019 Supp. 38-2269(g)(1).

Contrary to Father's contention, there was testimony directly supporting termination as being in the best interests of the children. Martinez opined that it would be in the children's best interests that Father's parental rights be terminated. She testified that "it doesn't seem like there's a bond between the kids and the parents. And the kids do what they want. The don't actually listen to parents. . . . [B]ecause even the kids mention that they don't really have that connection and relationship with Dad." Importantly, according to Martinez, the three younger children reported that at home the parents were doing drugs and the younger children were on their own with their older sister, K.O., as their parent. Martinez highlighted the principal reason why termination was in the children's best interests:  "[T]here's instability, the lack of parenting. Even before they were in custody, the kids reported that parents weren't really parents to them."

For her part, Whaley testified that, in her opinion, the fact that the children had been out of the home without permanency was concerning. She testified that "the longer they go without permanency or knowing what their permanency is going to be, the more disruptive it is to their emotional well-being." Whaley continued, "It's just also the factor [Father and Mother] can provide what these children need in the long term regarding their physical and emotional well-being, and we have not seen anything change or progress to show in the future it would be different."

As recounted earlier in this opinion, there was considerable evidence to support the opinions of Martinez and Whaley. The district court obviously credited these opinions since both professionals spent one year using their best efforts to reintegrate Father with his children to no avail. Based on the evidence in the record, it cannot be said that the district court's ruling in this regard was so unreasonable that no one would agree with it.

Affirmed.

16