NOT DESIGNATED FOR PUBLICATION

No. 124,714

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of J.H.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed June 3, 2022.
Affirmed.

*Laurel Michel Driskell*, of Kennedy Berkley, of Salina, for appellant natural father.

*Nathan L. Dickey*, assistant county attorney, for appellee.

Before ARNOLD-BURGER, C.J., WARNER and CLINE, JJ.

PER CURIAM:  This is an appeal by Father of the termination of his parental rights to his 12-year-old son, J.H. Father argues the district court's finding of unfitness was not supported by clear and convincing evidence. After a careful review of the record, we find no error and affirm.

FACTUAL AND PROCEDURAL HISTORY

In September 2019, the State petitioned to have ten-year-old J.H. declared a child in need of care based on his truancy. A month later, the State filed an amended petition alleging physical abuse, physical neglect, and lack of supervision of the child based on Mother's drug use and failure to appropriately supervise J.H., and Father's incarceration. The record reflects that J.H. had been in foster care four years earlier when the court

1

removed him from Father's home because of Father's drug use and the home environment. He was in foster care for five months before being reintegrated into Mother's home.

J.H. reported to the Division of Children and Families (DCF) personnel that he is often left unattended by Mother, that he has observed Mother using drugs, and he has observed Mother having sex with unknown men in motel rooms in which they are staying. He said Mother often leaves at night after he and his sister go to bed. J.H. awakens and gets on his bicycle and traverses busy streets in attempts to locate her. J.H. started exhibiting bizarre, disruptive, "almost seemed manic" episodes at school. Mother reported that police recently gave J.H. a ticket for criminal damage to property for spray painting a sidewalk. J.H. reported physical and emotional abuse from Mother, including hitting him, strangling him, and locking him out of the residence. He stated he did not feel safe at home. J.H. was taken into the protective custody of DCF in October 2019 and housed away from his parents.

The district court adjudicated J.H. to be a child in need of care on January 16, 2020. It found that there was clear and convincing evidence that J.H. was without adequate parental care and without the necessary care or control for his physical, mental, and emotional health from Mother or Father. J.H. remained in out of home placement.

In May 2020, a licensed psychiatrist diagnosed J.H. with Disruptive Mood Dysregulation Disorder, mild intellectual disability, attention deficit hyperactivity disorder and PTSD. As the case progressed, J.H. revealed that he had been physically, emotionally, verbally, and sexually abused by Mother, Father, a stranger, and Mother's boyfriends. He has been in and out of inpatient mental health treatment facilities many times. Facility personnel have had to restrain and place him in seclusion based on a fear of self-harm and explosive anger. Regardless of his placement, it was clear that he would need significant mental health services in place to help him live a happy, healthy life.

2

By October 2020, Father had not shown proof of a residence or employment, had not completed a mental health or drug and alcohol intake, had not performed UA tests as required to reintegrate with J.H. As a result of his refusal to take drug tests and his failure to communicate with the assigned social services agency, Father had no visits with J.H. for over a year. Father admitted that he had continued to use illegal substances and refused to take drug tests. On the day of his last visit with J.H., Father did not get out of bed all day and told J.H. to feed himself while he slept. Father also used marijuana around J.H. that day. J.H. reported that he could hear Father having sex in one of the rooms of the house. A month later, Father reported having started mental health therapy but had new criminal charges in Potawatomie County. The district court found reintegration was no longer viable as to Mother or Father. As a result, the State moved to terminate the parental rights of both Mother and Father.

At a review hearing in February 2021, Father had still not visited with J.H. and had two active warrants for his arrest. Mother died in February 2021, the victim of a homicide.

The court held a termination hearing in August 2021. J.H. was still in an out-of-home placement and had been for twenty-two months. Father admitted at the hearing that he had not provided any proof of his employment, he had only taken 3 out of 100 requested drug tests (although the case worker's records revealed he had only taken one, in November 2019), he had not completed treatment for drug abuse, nor had he completed family or individual therapy, and he had not submitted proof that he had completed a parenting class. Although he claimed he had completed the parenting class, he could not recall what was discussed at parenting class. He agreed that he had not seen J.H. in two years as of the hearing because of his failure to comply with drug testing requirements. He had to show three clean UAs in a row to see J.H. He was unable or unwilling to do so. Case workers allowed Father to write letters to J.H. if he followed certain protocols. He did not write any letters to J.H.

J.H. has stated that he has no relationship with Father and does not want one. A psychological examination completed in July 2021 noted that J.H. "has experienced very negative male influences in his life in the form of his mother's abusive boyfriends as well as his abusive and absent father."

At the time of the hearing Father was in the Riley County Jail serving a 30-day sentence for driving on a suspended license. Father also had just completed serving time in jail for a probation violation. He had also served time in the Marshall County Jail and the Pottawatomie County Jail in the preceding year. When the case began in October 2020, he was serving a seven-month jail sentence for Riley County. Since the case began, Father had resided in five residences in the cities of Marysville, Westmoreland, Abilene, and Manhattan, He never provided copies of his leases to the social service agency supervising his case, nor did he provide pay stubs or statements of employment from his employers. He also admitted that he had not cooperated with case workers for much of the case. In fact, according to his case manager he often cussed and yelled at her and even threatened her and her children. He was difficult to reach by phone, changing his number multiple times and blocking the case worker's number.

After hearing the evidence, the district court terminated Father's parental rights to J.H. We will more fully outline the reasons below. Father timely appealed.

ANALYSIS

On appeal, Father makes one argument—that there was not sufficient evidence to support the district court's finding that Father was unfit and that termination of his parental rights was in the best interests of J.H.

The law regarding termination of parental rights is well settled. A parent has a constitutionally recognized fundamental right to a parental relationship with his or her

4

child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). For these reasons, parental rights for a child may be terminated only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, 1113, 336 P.3d 903 (2014).

A court may terminate parental rights only after a child has been adjudicated to be a child in need of care and the court finds by clear and convincing evidence that

- the parent is unfit and unable to care properly for a child;
- the conduct or condition that renders the parent unfit is unlikely to change in the foreseeable future; and
- by a preponderance of evidence, it is in the best interests of the child to terminate parental rights. See K.S.A. 2020 Supp. 38-2269(a), (g)(1).

In reviewing a district court's termination of parental rights, we view all evidence in the light most favorable to the prevailing party to determine whether a rational fact-finder could have found it highly probable by clear and convincing evidence that parental rights should be terminated. *In re K.W.*, 45 Kan. App. 2d 353, 354, 246 P.3d 1021 (2011). In making this determination, we do not "weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." *In re B.D.-Y.*, 286 Kan. at 705.

CLEAR AND CONVINCING EVIDENCE SUPPORTS THE DISTRICT COURT'S FINDINGS THAT THE STATUTORY PRESUMPTION OF UNFITNESS APPLIES TO FATHER AND HE FAILED TO REBUT THE PRESUMPTION

Kansas statutes allow a court to presume a parent is unfit if it is established by clear and convincing evidence that the child has been placed outside the child's home "under court order for a cumulative total period of one year or longer and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by

5

the court, directed toward reintegration of the child into the parental home." K.S.A. 2020 Supp. 38-2271(a)(5). Once the presumption is established, the burden shifts to the parent to rebut the presumption by a preponderance of the evidence. Failure to prove that the parent is now fit and able to care for the child now or will be fit in the foreseeable future mandates the termination of parental rights. K.S.A. 2020 Supp. 38-2271(b).

Here the district court found that the presumption of unfitness applied because J.H. had been in an out-of-home placement for more than a year and Father had substantially neglected or willfully refused to carry out a reasonable plan directed toward reintegration. Father concedes that J.H. has been in out-of-home placements for over a year, but he disputes that there was clear and convincing evidence that he neglected or refused to carry out a reasonable plan of reintegration. He rests his argument on the proposition that he did not neglect his responsibilities but was prevented from carrying out a reasonable plan of reintegration based on justifiable reasons, unreasonable requirements by case workers, and the deterioration of his relationship with the social service agency managing his case.

But the court noted that Father had not completed any of his case plan tasks and clear and convincing evidence supports that finding. Father had not seen J.H. in two years because he refused to take drug tests. He had no proof of stable housing or employment; he had not completed drug treatment or a mental health evaluation; he continued to have negative contact with law enforcement and was incarcerated at the beginning of the case, throughout the case and at the time of the termination hearing for various reasons; he had no proof that he completed parenting classes; he did not participate in family therapy and has not maintained sufficient and appropriate contact with the social service agency monitoring his case. These requirements were first put in place in November 2019 and Father had still not completed them or shown proof of completion in October 2021.

6

Having found that application of the presumption was supported by clear and convincing evidence, the burden shifts to Father to show by a preponderance of the evidence he is fit and able to care for the children now or will be fit in the foreseeable future. K.S.A. 2020 Supp. 38-2271(b). He failed to do so. He presented no evidence that he was fit and able to care for J.H.

At the time of the termination hearing Father was in jail. At the hearing, he admitted he had not completed drug testing and he knew that he had to do so to visit J.H. He had no idea what medications J.H. was taking. He admitted that he has not had a significant relationship with J.H. since the case started. He admitted to having several residences and never providing proof to the social service agency monitoring his case. He also admitted he had never provided any pay stubs or any other proof of employment. He admitted he had not cooperated with case workers. He claimed to have attended parenting classes but had no idea what was discussed.

Father claimed he was not given the opportunity to communicate with J.H. Yet he admitted he had to have three clean drug tests in order to see J.H. and he had failed to do so. Father was told he could send letters to J.H., but he failed to do so. He claimed when he asked about sending letters, he was told to contact his attorney about it. But he presented no evidence that he did talk to his attorney about it and was somehow thwarted in his attempts to write his son.

Father's plans after his release from jail were vague at best. He stated he was "going to be moving back to Westmoreland to live with—or to work for [a past employer]." Yet he had not even spoken to that employer about it. Father has other children. He presented no testimony about his ability to care for them in support of a finding that he could care for J.H. He stated only that they live with their mother. The district court noted that J.H. had serious mental health and behavioral issues that Father would need to address and there were services that Father would have to arrange. But

7

"father hasn't followed through on setting up his own services" so there was no sign that we he could arrange for all the services J.H. would need.

Under the presumption, failure to prove that the parent is presently fit and able to care for the child now or will be fit in the foreseeable future mandates the termination of parental rights. K.S.A. 2020 Supp. 38-2271(b). There was sufficient evidence to support this finding. At a subsequent hearing and without objection, the district court also clarified that considering the physical, mental, and emotional needs of J.H. it was in the child's best interests that Father's parental rights be terminated. For these reasons, the court did not err in terminating Father's parental rights to J.H.

Affirmed.